[No. 35300.   Department Two.   November 9, 1960.]

*In the Matter of the Estate of* SAMUEL GLANT, *Deceased.*[1]

[1]Reported in 356 P. (2d) 707.

*Earl A. Phillips* and *Malcolm J. Villesvik,* for appellant.

*Riddell, Riddell & Williams,* for respondents.

OTT, J.—Samuel Glant, at the time of his death, owned a 22.54% interest in the Pacific Iron and Metal Company, a partnership which had been engaged in the waste materials business for a period exceeding thirty-eight years. By the terms of his will, Fay Phyllis Glant, his widow, was bequeathed a 7.51% interest in the company. Pursuant to RCW 11.64.030, the surviving partners petitioned the court to fix the price and determine the terms of sale of the interest bequeathed to Mrs. Glant, in accordance with the purchase preference rights afforded surviving partners by the statute.

A pretrial conference was held which resulted in an order being entered setting out the admitted facts and defining the items of dispute. At the hearing upon the petition, the court fixed the total value of the partnership at $562,370.87, and computed the widow's 7.51% interest at $39,129.90. Because the widow elected to receive interest on the value

of her share from January 1, 1959, to the date of the judgment (rather than share in the profits or losses of the partnership during the settlement period), she was awarded the sum of $1,239.11, or a total payment of $40,369.01.

The court fixed the terms for payment of the purchase price as follows: $10,369.01 down payment, and the sums of $10,000 on or before July 10th of 1960, 1961, and 1962, with interest on the deferred balance payable quarterly at the rate of 5% per annum. The surviving partners were to execute an installment note, jointly and severally, and, upon the widow's accepting the terms of the sale, she was to transfer her interest in the partnership to them.

The partnership was indebted to its bank in the sum of $210,000, being the unpaid balance of an unsecured loan in the original amount of $260,000. As a further condition of the purchase, the surviving partners were to execute a renewal note to the bank, and the estate of Samuel Glant released of its liability upon the partnership indebtedness.

Findings of fact, conclusions of law, and judgment were entered. The widow appeals, and asserts eight assignments of error.

By assignment No. 1, the appellant urges that the court erred in departing from the pretrial order and allowing proof of an omitted item, referred to in the record as the Umatilla transaction, which reduced the net worth of the partnership by $22,797.36. It is the appellant's contention that she was "deprived . . . of a fair trial and prejudiced . . . by surprise inclusion of a new issue." The pretrial order expressly permitted unlisted exhibits to be admitted at the time of trial where good cause was shown, and also provided that "this order shall not be amended, except by order of the court . . . or to prevent manifest injustice."

The record discloses that the Umatilla transaction was partnership business and an allowable item to reduce the net worth of the partnership, also that neither party was aware of the fact that it had been inadvertently omitted by the partnership's accountants until after the pretrial order had been entered and the petition came on for hearing. Al-

though appellant objected to the admission of proof of this transaction, she did not claim surprise and move for a continuance, nor did she make an offer of proof to establish the invalidity of the item.

■■ The office of the pretrial conference is to expedite the final determination of the issues being litigated. Its use is not to operate as a barrier to the presentation of material facts at the trial, which were not considered at the pretrial conference because they were mutually unknown, and which became known to the parties subsequently.

We find no merit in appellant's first assignment of error.

Appellant's second assignment relates to the trial court's finding of fact that the partnership's good will, if any, had no value. The court found that

" . . . The reputation for integrity, fair dealing and competent management that has been built up through the years is personal to Julius Glant and Earle T. Glant and does not inhere in the partnership apart from them. *There is no good will in the scrap business in the sense of a saleable asset.*" (Italics ours.)

■ The good will of a going business is an element which inheres in it and cannot be separated from the whole. *Stanton v. Zercher*, 101 Wash. 383, 172 Pac. 559 (1918). There are many elements, defined in the decisions of this court and other jurisdictions, which comprise good will. Among these are continuity of name, location, reputation for honesty and fair dealing, individual talents and ability of the members of the going business organization, and many others. *J. L. Cooper & Co. v. Anchor Securities Co.*, 9 Wn. (2d) 45, 113 P. (2d) 845 (1941). Good will is an intangible element that inheres in the value of a going business.

The record before us discloses that Pacific Iron and Metal Company has operated in the same locale for over thirty-eight years, and continues to do so. From its inception, it has been comprised of the same key personnel, who are men of exceptional ability in their chosen field of endeavor, and who have acquired such stature in the business world, over the years, that the partnership was able to borrow more

than one quarter of a million dollars from its bank on an unsecured loan.

Appellant's expert witness testified that he made a careful analysis of the business involved and, after applying an approved formula for determining the value of this intangible element of a going business under nearly identical management, arrived at the conclusion that this business had a good-will valuation of $55,185.50. Appellant's 7.51% share of this good-will value is $4,144.43.

The only evidence offered to the contrary was that of the surviving partners. They testified, *inter alia*, that they had previously purchased two scrap businesses, the consideration for which was based upon inventory values, and that no additional amount was paid for good will. One of these businesses they liquidated immediately; the other they continued to operate under its original name. The survivors further testified that they had never heard of a junk business being sold or purchased with any consideration paid for the good will. This testimony was all of a negative nature. It did not establish that there was no good-will value in connection with the Pacific Iron and Metal Company's scrap business, as it was conducted by its talented personnel over the thirty-eight years, and which the survivors had operated without interruption since the death of Samuel Glant and expected to continue at the same locale with the same remaining personnel.

We are convinced that the evidence does not sustain the trial court's finding that the partnership had no good will upon which a value could be determined, and that the court erred in its finding that it had no such value at the time of decedent's death.

Assignment No. 3 relates to the trial court's use of 12.29% as the measure of the average gross profit to be deducted from the partnership assets, in order to arrive at the company's net worth. The appellant contends for a percentage of 9.8. The 12.29% profit was based upon a five-year average of the partnership's gross business, while the 9.8% was based upon a period of five months, from January 1, 1959, to May 31, 1959. The trial court, in the exercise of

its discretion, properly adopted the percentage of profit based upon the five-year average.

We find no merit in this assignment of error.

The fourth assignment relates to an alleged double deduction for yard labor expense. The yard labor expense admittedly is a deductible item. The item is mentioned in the testimony as it related to two matters considered by the court. However, from our examination of the record, this item of expense in connection with the net value of the inventory was deducted only once.

We find no merit in this assignment of error.

Appellant's fifth assignment of error relates to the court's denial of reimbursement to appellant of fees paid for the expert services of an appraiser and an accountant.

At common law, a partnership business ceased to exist upon the death of one of the partners, and the death of a partner occasioned an accounting and a distribution of the assets to qualified representatives of the deceased and to the surviving partner or partners. Our legislature has abrogated the common law in this regard in two particulars: (1) The surviving partner is permitted, under certain circumstances, to continue the partnership business, and (2) the survivor is granted a preferred right to purchase the deceased partner's interest in the partnership. In the instant case, the determination of the value of the deceased's interest required an account of the partnership business. A petition which seeks an accounting invokes the equitable jurisdiction of the court. *In re Wilson's Estate*, 50 Wn. (2d) 840, 315 P. (2d) 287 (1957); *Holman v. Cape*, 45 Wn. (2d) 205, 273 P. (2d) 664 (1954); 40 Am. Jur. 450, § 461.

In denying appellant's appraisal and accounting expenses, the trial court said, in its oral opinion:

"There is another minor issue here. Counsel for the defendant party explained it, and it is all in my notes here, what it cost him to secure this testimony—we have the amounts, both counsel know them—and his proposition is there should be an allowance made to be paid by the firm for the preparation of that case, and I admit the case is well prepared and it was a duty to prepare it, but I do not know

where there is any authority for me to do that. It sounds like equity but I am not in the equity business right now. This is a common law case."

■ The petition invoked the equity jurisdiction of the court. The trial court erred in its conclusion that it was without authority to allow reimbursement of these items. 68 C. J. S. 1001, § 448.

Further, RCW 11.64.030 provides:

"The surviving partner or the surviving partners jointly, shall have the right at any time to petition the court to purchase the interests of a deceased partner in the partnership. Upon such petition being presented the court shall, in such manner as it sees fit, learn and by order fix the value of the interest of the deceased over and above all partnership debts and obligations, and the terms and conditions upon which the surviving partner or partners may purchase, and thereafter the surviving partner or partners shall have the preference right for such length of time as the court may fix, to purchase the interest of the deceased partner at the price and upon the terms and conditions fixed by the court. . . ."

The statute has two purposes: (1) It *grants a preference right* to the surviving partner to purchase the deceased partner's interest, and (2) it *places a duty upon the court* "in such manner as it see fit, [to] learn and by order fix the value of the interest of the deceased," and establish the terms of the sale. Implicit in the second purpose is the necessity for the court to incur expense in performing its statutory duty of fixing the value of the interest to be sold. The statute is silent as to who should bear the expense. The application of equitable principles requires that the person who sets in motion the statutory machinery by which he is to be primarily benefited should bear the reasonable expense that is entailed in administering such a statute, in order that the benefit may be realized.

■ The trial court, by the terms of the statute, selects the manner in which the valuations will be determined. In the instant case, the parties furnished the proof of the value, and the court acquiesced in this manner of determining value. The value of the services actually rendered by ap-

pellant's experts, as it relates to the real-estate appraiser in the sum of $411 and to the inventory appraiser in the sum of $250, is not questioned. Their valuations were accepted by both the court and respondents. The testimony materially assisted the court in its determination of value, and was of benefit to the remaining partners. We hold that the surviving partners benefited by the exercise of their preference right to purchase, as provided in RCW 11.64.030, and should bear the reasonable cost of the administration of the statute, and that, in the instant case, the appellant should be reimbursed in the sum of $661.

With reference to appellant's claim for reimbursement for expert accounting services, the record discloses that both parties furnished the court with expert accountants' testimony, neither of which was totally relied upon by the court. Under the circumstances of this case, the court properly denied the appellant reimbursement for this expense item.

In the sixth assignment of error, appellant contends that the court erred in failing to make provision for security on the unpaid balance of the purchase price of appellant's interest.

RCW 11.64.030, *supra*, grants to the court discretion to fix the terms of sale. The appellant has not shown in what manner she has been prejudiced by the terms of sale fixed by the court.

We find no merit in this assignment of error.

In view of our disposition of the cause, we do not reach assignments of error Nos. 7 and 8.

The cause is remanded to the trial court, with instructions to modify the judgment by increasing the amount thereof by $4,805.43, to conform with the views herein expressed. As so modified, the judgment is affirmed. Neither party will recover costs on appeal, as neither has completely prevailed.

WEAVER, C. J., HILL, FINLEY, and ROSELLINI, JJ., concur.

December 19, 1960. Petition for rehearing denied.