**Roger Murray CHESTNUT, Respondent-Appellant,**

v.

**Patricia Mooney CHESTNUT, Petitioner-Appellee.**

**No. 06A01–8602–CV–28.**

Court of Appeals of Indiana, First District.

Nov. 12, 1986.

---

Peter G. Tamulonis, Dennis F. Cantrell, Kightlinger & Gray, Indianapolis, for respondent-appellant.

H. Joseph Certain, Kiley, Osborn, Brown, Kiley, Harker & Rogers, Marion, for petitioner-appellee.

RATLIFF, Judge.

## STATEMENT OF THE CASE

Roger Murray Chestnut appeals the trial court's judgment distributing marital property, ordering child support payments, and awarding attorney fees. We affirm.

## FACTS

Beginning in 1979, Roger Murray Chestnut (Roger) and Patricia Mooney (Patricia) lived together in a house on Clarks Creek Road. Roger had purchased the house in 1970. In 1983, Roger and Patricia were married. At that time, Roger conveyed the Clarks Creek residence to Patricia and himself as tenants by the entireties. One year later, they had a child, Kathryn.

At the time of their marriage, Roger contributed $38,166 worth of assets consisting of the Clarks Creek Road property ($30,000), an automobile ($3000), tools ($3000), and personal property ($2166). All of Roger's assets were unencumbered. Patricia brought into the marriage $4,043 worth of assets consisting of an automobile ($1000), a certificate of deposit ($1043), personal property ($1050), and the cash value on life insurance ($950). Thus, the total assets as of the date of marriage were $42,209. From the figures above, Roger brought 90% of the assets while Patricia brought 10% into the marriage.

Roger's principal source of income came from rehabilitating homes and reselling them at a profit. However, the record is unclear as to when he started this enterprise. After their marriage, Roger and Patricia obtained a $22,000 loan secured by a mortgage on the Clarks Creek Road property.[1] With the loan proceeds, they purchased a house in Mooresville. Roger used the excess money for financing, to buy materials to rehabilitate the Mooresville house, and to pay household expenses.

When this money was exhausted, Roger used his automobile as collateral for an additional loan of $2000 to pay household bills. Roger completed the Mooresville house in January of 1984 and began renting it for $400 per month.

Roger and Patricia mortgaged the Mooresville house for a $28,000 loan. Out of this money, Roger and Patricia made mortgage payments on their Clarks Creek Road home and two downpayments on a home on Franklin Street and a home in Plainfield. Rehabilitation materials were also purchased. The Plainfield house was obtained with a $22,000 mortgage. Roger sold the Franklin Street property in October of 1984 for a profit of $12,000. This amount was placed in a certificate of deposit (C.D.) along with $4000 which represented the remaining loan proceeds from the Mooresville loan. Roger used the C.D. to pay mortgage installments and household

expenses. At the time of Roger and Patricia's separation, rehabilitation on the Plainfield home was substantially complete. Four months later, Roger rented the Plainfield house for $450 per month.

From 1979 through 1983, Roger was self-employed as a handyman and had little or no taxable income. This was the time period when Roger and Patricia cohabited prior to marriage. After they married in 1983 and throughout their marriage, Roger worked approximately 40 hours per week on rehabilitating the various properties.

From 1979 until the birth of Kathryn in 1984, Patricia worked six days a week at a hotel. Her annual earnings for that period ranged from $8000 to $13,400. With her income, Patricia paid for groceries, clothing, cleaning and other household expenses. During her days off, she worked with Roger on rehabilitating houses. In addition to her job, Patricia performed the homemaking chores. When Kathryn was born in 1984, Patricia and Roger jointly agreed that Patricia should quit her job at the hotel and look for another job. After Patricia looked for a job for two weeks, Roger convinced her to work full-time with him in the rehabilitation business. She did so until their separation.

After trial, the trial court divided and distributed the marital property. Roger got approximately $23,120 in assets as follows: the Clarks Creek Road property ($30,000 fair market value less outstanding mortgage of $21,700), $9000 from the sale proceeds of the Plainfield property, a 1976 Cutlass automobile ($3000 fair market value less lien of $1000), a GMC truck ($9000 fair market value less lien of $11,600), personal property ($2970), tools ($3000), a C.D. ($150 balance), and income tax refund proceeds ($300). Patricia received approximately $27,894 in assets as follows: the Mooresville property ($37,000 fair market value less outstanding mortgage of $27,900), personal property ($2150), a 1977 Dodge automobile ($1000), a C.D. ($400 balance), cash value of insurance ($950), taxes

1. Roger and Patricia were co-makers on all loans secured by real estate mortgages. They took title to all real estate purchased as tenants by the entirety.

($994), and the remaining sale proceeds from the Plainfield property ($49,500 fair market value less about 10% for commissions and selling expenses less outstanding mortgage of $22,250 less $9000 which goes to Roger). Thus, after the trial court's distribution, Roger received about 45% of the assets while Patricia received about 55%.

Additionally, the trial court ordered Roger to pay $45 per week for child support. The trial court further ordered Roger to pay $3000 to defray a portion of the costs of Patricia's attorney fees.

## ISSUES

1. Whether the trial court abused its discretion in dividing the marital property.

2. Whether the trial court abused its discretion in ordering Roger to pay $45 per week as child support.

3. Whether the trial court abused its discretion in ordering Roger to pay $3000 for a portion of Patricia's attorney's fees.

## DISCUSSION AND DECISION

*Issue One*

In Indiana Code section 31–1–11.5–11(b), our legislature set forth five factors which a trial court must consider in arriving at a "just and reasonable" division of assets:

"(1) The contribution of each spouse to the acquisition of the property, including the contribution of a spouse as a homemaker;

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift;

(3) The economic circumstances of the spouse at the time the disposition of the property is to become effective, ...;

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property; and

(5) The earnings or earning ability of the parties as related to a final division of property and final determination of the property rights of the parties."

The trial court must consider all of these factors with none taking precedence over another. *Wright v. Wright* (1985), Ind. App., 471 N.E.2d 1240, 1244, *trans. denied.* There is a very strong presumption that the trial court considered all the evidence of record and applied the statutory factors. *In re Marriage of Mulvihill* (1984), Ind. App., 471 N.E.2d 10, 13.

In reviewing a trial court's division and distribution of property, we cannot reweigh the evidence or substitute our judgment for that of the trial court. Rather, we will limit our review to a consideration of whether the trial court abused its discretion. *Taylor v. Taylor* (1982), Ind., 436 N.E.2d 56, 58; *Hoyle v. Hoyle* (1985), Ind. App., 473 N.E.2d 653, 657. As our supreme court held, "The trial court will be reversed only where the result reached is clearly against the logic and effect of the facts and circumstances before the court, including the reasonable inferences to be drawn therefrom." *Taylor*, at 58.

We hold that the trial court did not abuse its discretion in dividing the property between Roger and Patricia, despite the short duration of their marriage. Roger argues strenuously that the parties' period of premarital cohabitation should have no significance in the distribution of property and points to a lack of case authority in Indiana. However, there is support from our court which favors Patricia's argument. In *Glasgo v. Glasgo* (1980), Ind. App., 410 N.E.2d 1325, *trans. denied*, this court held that cohabitation can be a basis for distribution of assets under contractual and equitable principles. In that case, a husband and wife divorced. Later, they reconciled and lived together for five years during which time they built a home together. Although this court recognized that common-law marriages were statutorily abolished in Indiana Code section 31–1–6–1, we did not preclude the woman from recovery. "Her complaint may not be a model upon which to assert a contract action, but she does not seek relief upon impermissible grounds." *Id.* at 1327. We

distinguished the celebrated *Marvin* case [2] since no support or maintenance payments were involved. Our court narrowly defined the issue as relating only to jointly acquired property.

In *Glasgo*, we reaffirmed the rule that "any contract in which sexual services serve as consideration are unenforceable and void as against public policy." *Id.* at 1331. However, this court refused to strictly apply this rule to all cohabitation relationships. Epithets such as "meretricious" or "illicit" "should be reserved for cases in which they are deserved." *Id.* at 1330. We held that the trial court could fashion relief in favor of the woman either under the theory of an implied contract or under principles of equity. *Id.* at 1332.

■ While *Glasgo* is factually distinguishable from the case under consideration, we are persuaded by its rationale. Roger and Patricia lived together a total of six years, four as premarital cohabitants and two as husband and wife. It would be against public policy to ignore Patricia's contribution during the period prior to marriage since she and Roger eventually married. Other states have reasoned similarly. *Coney v. Coney* (1985), 207 N.J.Super. 63, 503 A.2d 912; *Nelson v. Nelson* (1986), Minn.App., 384 N.W.2d 468; *Estep v. Estep* (1985), 508 Pa. 623, 500 A.2d 418. *Contra Hewitt v. Hewitt* (1979), 77 Ill.2d 49, 31 Ill.Dec. 827, 394 N.E.2d 1204. We therefore hold that the trial court could have considered Patricia's contributions during premarital cohabitation when it distributed the property upon dissolution. However, we reserve for another day the question of whether premarital cohabitation without subsequent marriage gives rise to potential relief.

During the four year period of cohabitation, Patricia worked six days a week and performed homemaking duties. With her income, she paid many of the household expenses. It was within the trial court's discretion to consider this evidence when distributing the marital assets under principles of equity.

■ Even if Patricia's contribution during premarital cohabitation is ignored, we still hold that the trial court did not abuse its discretion. Patricia's contribution as a homemaker and her help with Roger's rehabilitation business justify the trial court's division. Without her help, the real estate business would not have been possible since Patricia's job provided much of the necessary cash flow.

Also, the trial court could have concluded that Roger's earning ability exceeded his current earnings. Roger's completion of two years of college and his apparent skill and experience evince the possibility that Roger should have been making a better living for himself than he did. Given all of the statutory factors, we hold that Patricia's receipt of 55% of the assets after the two-year marriage was not an abuse of discretion.

*Issue Two*

Indiana Code section 31–1–11.5–12(a) specifies four factors which a trial court must consider when making an order for child support:

"(1) The financial resources and needs of the custodial parent;

(2) Standard of living the child would have enjoyed had the marriage not been dissolved or had the separation not been ordered;

(3) Physical or mental condition of the child and his educational needs; and,

(4) Financial resources and needs of the non-custodial parent."

In Ind.Code § 31–1–11.5–12(b), other factors are listed. In reviewing a trial court's order for child support, we will reverse only if there is an abuse of discretion. *Branstad v. Branstad* (1980), Ind. App., 400 N.E.2d 167, 169.

■ In light of the evidence at trial which indicated that it cost $75 to $85 per

2. *Marvin v. Marvin* (1976), 18 Cal.3d 660, 134 Cal.Rptr. 815, 557 P.2d 106.

week to raise Kathryn, exclusive of shelter and health care, we hold that the trial court's order for Roger to · pay $45 per week was not an abuse of discretion. We reject Roger's ludicrous argument that had the marriage not dissolved, Kathryn would have been raised in a "spartan, frontier-style environment". Appellant's Brief at 35. We also reject Roger's claim that the trial court's division of the assets leaves him nothing with which to pay $45 per week. Roger received $23,120 in unencumbered assets and had the apparent ability and expertise to earn income. *Reffeitt v. Reffeitt* (1981), Ind.App., 419 N.E.2d 999, 1003–04.

### Issue Three

■ Indiana Code section 31–1–11.5–16 allows the trial court to assess reasonable attorney's fees against one party in a divorce proceeding. The determination of payment of costs and attorney fees lies within the sound discretion of the trial court. We will reverse only upon a showing of a clear abuse of discretion. *McDaniel v. McDaniel* (1964), 245 Ind. 551, 562, 201 N.E.2d 215, 220; *McBride v. McBride* (1981), Ind.App., 427 N.E.2d 1148, 1152.

■ In the case under consideration, the trial court ordered Roger to pay $3000 in monthly installments of $200. At the time of trial, Patricia had incurred about $4600 in attorney's fees. Roger alleges that the trial court's order was excessive in light of his financial status after the dissolution. However, we refuse to substitute our judgment for that of the trial court. Roger not only had the resources to pay the fees but also had the ability to engage in gainful employment. *Planert v. Planert* (1985), Ind.App., 478 N.E.2d 1251, 1254. Therefore, the trial court did not abuse its discretion.

Judgment affirmed.

ROBERTSON, P.J., and NEAL, J., concur.