F.H. PORTER, Respondent–Appellant,

v.

C.J. PORTER, Petitioner–Appellee.

No. 40A01–8704–CV–00092.

Court of Appeals of Indiana,
First District.

July 27, 1988.
Rehearing Denied Sept. 19, 1988.

▌

G. Terrence Coriden, Lawson, Pushor, Mote & Coriden, Columbus, for respondent-appellant.

Deborah L. Farmer, Campbell, Kyle & Proffitt, Noblesville, for petitioner-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

Respondent-appellant, Frederick H. Porter (Fred), appeals the provisions of a Jennings Circuit Court dissolution decree dissolving his marriage to petitioner-appellee, Carol J. Porter (Carol), relating to the division of marital property and the maintenance of child support.

We affirm.

## STATEMENT OF THE FACTS

Fred and Carol were married on August 10, 1974. The marriage produced two sons, Christopher and Matthew, ten and eight years old respectively at the time of the dissolution. Fred and Carol separated on January 23, 1986, and Carol filed a petition for dissolution on January 28, 1986. At the time Fred, a licensed medical doctor, earned approximately $200,000 per year as an otolaryngologist (ENT),[1] for Southern Indiana ENT, Inc. (Southern Indiana) which Fred previously incorporated in 1979. Carol, who had been a full-time wife, mother, and homemaker after Christopher's birth, obtained a nursing job after the separation with an expected annual income of $18,000.

A contested final hearing was held on September 11, 1986. The trial court entered a dissolution decree on September 17, 1986. The trial court awarded custody of Christopher and Matthew to Carol, subject to Fred's reasonable visitation. Fred was ordered to pay for the support of the children as follows:

1.  Three Hundred Seventy–Five Dollars (375.00) per week, fifty-two (52) weeks per year.

2.  Three Thousand, One Hundred Twenty Dollars per year ($3,120.00) for clothing and sports equipment in the following manner:

    (a) Seven Hundred Fifty Dollars ($750.00) cash to the Wife each September 1 and April 1, including September of 1986.

    (b) The remainder in-kind with receipts made availble (sic) to the Wife.

3.  All reasonable medical, dental and optometric expenses.

4.  The costs of sports camps, clinics and lessons.

5.  That the above obligation and future support obligations be secured by term life insurance in the amount of Five Hundred Thousand Dollars ($500,000.00) payable to a trustee to be selected by the Husband and for the benefit of the children's support and education.

*Record* at 179. The trial court found the marital estate to have a total value of $935,222. The marital estate was broken down as follows:

| | | |
|---|---|---|
| 1. 1982 Volvo | | $ 7,500.00 |
| 2. Pension Plans [2] | | 300,000.00 |
| 3. Southern Indiana ENT, Inc.[3] | | 400,000.00 |
| TOTAL OF LITIGATED ASSETS | | $707,500.00 |
| TOTAL OF OTHER ASSETS | | 227,722.00+ |
| TOTAL | | $935,222.00 |

*Record* at 182. The trial court awarded $475,000 (approximately 51%) to Carol to be delivered as follows:

| | | |
|---|---|---|
| 1. 1982 Volvo | | $ 7,500.00 |
| 2. Home furnishings presently in her possession | | 9,015.00 |

---

1.  A branch of medicine that combines treatment of the ear, nose, and throat.

2.  Fred's share of pension and profit sharing program held by his corporate medical practice.

3.  Fred's share of his corporate medical practice.

3. Personal items presently in her possession ... $ 9,507.00
4. From the "old" Every Tuesday account ... 35,000.00
5. From the "new" Every Tuesday account ... 65,000.00
6. Wife's IRA ... 4,781.00
7. Checking account ... 9,197.00

TOTAL OF ASSETS TO BE TRANSFERRED IMMEDIATELY ... $140,000.00

*Record* at 183. The remaining $335,000 was to be in the form of an alimony judgment secured by the corporate shares of Southern Indiana and Fred's share of the pension/profit sharing plan. This amount was to be paid in monthly payments amortized over 20 years.

## ISSUES

Fred raises nine issues on appeal. One issue was addressed favorably by the trial court's response to Fred's motion to correct error. On another issue, Fred failed to set forth any argument in his brief and thus waived the issue. Ind. Rules of Procedure, Appellate Rule 8.3(A)(7). The remaining issues, consolidated and restated, are as follows:

I. Whether the trial court erred in determining the value of the marital estate.

II. Whether the trial court erred in its provisions concerning child support.

III. Whether the trial court erred in its provisions to secure the judgment.

IV. Whether the trial court erred with respect to the admission of certain evidence.

## DISCUSSION AND DECISION

### I. *The Marital Estate*

In marriage dissolution proceedings, IND.CODE 31–1–11.5–11(b) provides that the trial court shall divide the marital assets of the parties in a "just and reasonable manner." That same statute directs the trial court to consider the following factors in arriving at a just and reasonable division:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse prior to the marriage or through inheritance or gift.

(3) The economic circumstances of each spouse at the time the disposition of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in that residence for such periods as the court may deem just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to final division of property and final determination of the property rights of the parties.

IND.CODE 31–1–11.5–11(c).

Deciding what is a just and reasonable disposition is left within the sound discretion of the trial court. *Cunningham v. Cunningham* (1982), Ind.App., 430 N.E. 2d 809; *Hasty v. Hasty* (1981), Ind.App., 427 N.E.2d 1119. We will reverse only if that discretion is abused. *Ernst v. Ernst* (1987), Ind.App., 503 N.E.2d 619. In our review, the presumption is that the trial court considered all the evidence of record and properly applied the statutory factors. *Chestnut v. Chestnut* (1986), Ind.App., 499 N.E.2d 783. The party challenging the trial court's division of marital assets must overcome this presumption. *Temple v. Temple* (1982), Ind.App., 435 N.E.2d 259. This court will not weigh the evidence, but will consider the evidence in a light most favorable to the judgment. *Morphew v. Morphew* (1981), Ind.App., 419 N.E.2d 770. Therefore, we will find that the trial court has abused its discretion only where the result reached is clearly against the logic and effect of the facts and circumstances before the court, including the reasonable inferences to be drawn therefrom. *Chestnut, supra.*

Fred claims that the trial court erred in determining the value of the marital estate. Specifically, he maintains the trial court erred in determining the value of his share in the corporate practice, erred in determin-

ing that his share of the practice's pension/profit sharing plan was includable in the marital estate, and in determining the value of the plan. Consequently, Fred maintains that Carol was awarded assets greater than the marital estate.

### A. Goodwill

■ Fred first contends that the trial court erred in determining the value of his share in Southern Indiana because the court considered both tangible and intangible assets (e.g. goodwill) in its evaluation. Goodwill has been defined thusly:

> [T]he advantage or benefit which is acquired by an establishment beyond the mere value of the capital stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position, or common celebrity, or reputation for skill, or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partiality or prejudices. (Footnote omitted.)

38 Am.Jur.2d *Goodwill* § 1 (1968).

Specifically, he argues that Southern Indiana's shareholder purchasing agreement was the proper method for evaluating the corporate practice. That agreement provided for the purchase or sale of corporate shares of stock which are tangible assets. Therefore, Fred asserts that the trial court should have considered only the corporate practice's tangible assets in its evaluation.

Fred cites *Peddycord v. Peddycord* (1985), Ind.App., 479 N.E.2d 615, to support his contention. However, in that case the court did not hold that a corporate or professional practice must be evaluated solely on its tangible assets. Rather, the court only addressed the issue of which of two evaluation methods set forth in a partnership agreement should be adopted to determine the husband's interest in his law firm for purposes of property division in a dissolution proceeding.

The court in *Peddycord* stated in pertinent part:

There is no dispute that a spouse's interest in a professional partnership is a marital asset subject to division in a dissolution. However, placing a precise or even an approximately accurate value on such a partnership interest, especially when the partner whose interest in question continues as a member of the firm, is not easy.

Universally, when a partnership agreement exists, courts *have attempted* to value the continuing partner's interest by reviewing that agreement. *Weaver v. Weaver* (1985), 72 N.C.App. 409, 324 S.E. 2d 915; *Holbrook v. Holbrook* (1981), 103 Wis.2d 327, 309 N.W.2d 343; *In re Marriage of Fonstein* (1976), 53 Cal.App.3d 846, 126 Cal.Rptr. 264; *Stern v. Stern* (1975), 66 N.J. 340, 331 A.2d 257. (Emphasis added.)

*Id.* at 616. However, the courts in *Stern* and *Weaver* noted that when the terms of a partnership agreement are used, the value calculated is only a *presumptive* value which can be attacked as not reflective of the true value. Furthermore, in *Poore v. Poore* (1985), 75 N.C.App. 414, 331 S.E.2d 266, the court stated in pertinent part:

> In *Weaver,* we stated that there is no single best approach to valuing an interest in a professional partnership, and that various appraisal methods can and have been used to value such interests.

> \*    \*    \*    \*    \*    \*

> It is generally agreed that in valuing a professional practice, or an interest therein, for equitable distribution, it should not make any significant difference whether the practice is conducted as a corporation or professional association, a partnership, or a sole proprietorship.

> \*    \*    \*    \*    \*    \*

> If the practice is conducted as a partnership, and the value of the practice or an interest therein is set in a partnership or redemption agreement, *then the value set in the agreement should certainly be considered but should not be treated as conclusive.* (Emphasis added.) (Citations omitted.)

*Id.* at 419, 331 S.E.2d at 270. The *Poore* court concluded that in valuing a professional practice for marriage dissolution purposes, a court should consider its tangible assets along with its goodwill.

Fred further cites case law from foreign jurisdictions to support his argument. The major case cited is *Holbrook v. Holbrook* (1981), 103 Wis.2d 327, 309 N.W.2d 343. Its analysis was noted in *Peddycord, supra,* and in two other foreign cases cited by Fred.

In *Holbrook* the court held that the trial court erred in including in the marital estate the goodwill value of the husband's partnership interest. The *Holbrook* court stated that goodwill is intangible, amorphous, speculative, and that it cannot be assigned, sold, or conveyed by the individual owners. The court therefore concluded that evaluation of one individual's goodwill interest in a professional practice would amount to pure speculation.

While Fred is correct in noting that some other foreign courts have refused to consider goodwill in evaluating a professional practice, nevertheless, the vast majority have held that goodwill of a professional practice is property which should be included among the assets distributed upon the marriage dissolution. *Poore, supra; Dugan v. Dugan,* 92 N.J. 423, 457 A.2d 1 (1983); *Matter of Marriage of Fleege* (1979), 91 Wash.2d 324, 588 P.2d 1136; *see generally,* Annot., 52 A.L.R.3d 1344 (1973).

The trial court in the present case adopted the analysis in *In re Hull* (1986), Mont., 712 P.2d 1317. In that case the husband, an anesthesiologist, had been doing business as a professional corporation. The court in part held that goodwill of the husband's professional practice was a marital asset subject to property division in a dissolution proceeding.

The court in *In re Hull* adopted the analysis of the court in *Matter of Marriage of Fleege, supra.* In that case the court, in holding that the goodwill value of the husband's dental practice was an asset subject to division as part of the marital estate, stated in part:

Goodwill is property of an intangible nature and is commonly defined as the expectation of continued public patronage. *In re Marriage of Lukens,* 16 Wash.App. 481, 558 P.2d 279 (1976); *In re Marriage of Foster,* 42 Cal.App.3d 577, 117 Cal.Rptr. 49 (1974). Among the elements which engender goodwill are continuity of name, location, reputation for honest and fair dealing, *and individual talent and ability. In re. Estate of Glant,* 57 Wash.2d 309, 356 P.2d 707 (1960).

\*      \*      \*      \*      \*      \*

As the Court of Appeals pointed out, while the goodwill of a professional practice *may not be readily marketable* and the determination of its exact value may be difficult, *that element may nevertheless be found to exist in a given professional practice. The determination of its value can be reached with the aid of expert testimony and by consideration of such factors as the practitioner's age, health, past earning power, reputation in the community for judgment, skill, and knowledge, and his comparative professional success.* (Emphasis added.) *Id.,* 91 Wash.2d at 326, 588 P.2d at 1138. The court's statement is significant because in that case, along with the *In re Hull* and *Poore* cases, there was testimony by accountants evaluating the goodwill of the professional practices. The method of analysis involved consideration of the factors mentioned as applied to various accounting methods. Similar analysis was conducted by the two accountants who testified on behalf of Carol in the present case.

Concerning the argument that goodwill is not readily marketable, the case *Marriage of R.M. Lukens* (1976), 16 Wash.App. 481, 558 P.2d 279, is instructive. In that case the court rejected the argument that because a medical practice's goodwill was not readily marketable it is without value. The court in its analysis stated in part:

Goodwill is most often associated with commercial ventures. Nevertheless, it is recognized that the practice of an attorney, physician, or other professional per-

son may include such an element, even though the goodwill in such *instances is personal in nature and not a readily marketable commodity.* (Emphasis added.) (Citations omitted.)

*Id.* at 484, 558 P.2d at 281. The court further stated:

The recently graduated young professional who goes into business for himself may reasonably expect the initial years of his practice to be less profitable, this expectation being attributed in part to a lack of goodwill or "that the old customers will resort to the old place." *See* e.g., *In re Marriage of Foster, supra,* 117 Cal.Rptr. at 52. Similarly, if Dr. Lukens were to abandon his Tacoma practice and relocate as a sole practitioner in another state, he also should anticipate a shortage of business, even though his practice consists of the same physical assets and he presumably possesses the same degree of skill. *Again the difference must be attributed to his not having developed in his new locale a reputation as to skill, efficiency, and the other elements comprising goodwill.*

*Accordingly we do not think the dispositive factor is whether Dr. Lukens can sell his goodwill. His goodwill has value despite its unmarketability,* and so long as he maintains his osteopathic practice in Tacoma he *will continue to receive a return on the goodwill associated with his name.* The fact that professional goodwill may be elusive, intangible, and difficult to evaluate is not a proper reason to ignore its existence in a proper case. *In re Marriage of Lopez, supra,* [38 Cal.App.3d 93] 113 Cal.Rptr. [58] at page 67, and once its existence and value are ascertained, professional goodwill along with the other assets of the professional practice, should be included in a property division. *See Berg v. Berg,* 72 Wash.2d 532, 434 P.2d 1 (1967). (Emphasis added.)

*Id.* at 485–6, 558 P.2d at 281.

It should be noted that whether a doctor is a general practitioner or a medical specialist, goodwill value may be found in his professional practice. *Wisner v. Wisner*

(1981), 129 Ariz. 333, 631 P.2d 115. In that case the court, in holding that the husband's medical corporation possessed goodwill value, stated in part:

Of more importance, we have further determined that the finding that the husband is "a specialist who tends to see a patient for only one surgical procedure of short duration rather than treating a patient over an extended period," while supported by the evidence, is not conclusive that husband's practice possessed no goodwill value. To the contrary, the record is clear that husband's medical practice relied for its *success, not on repeat patients, but on repeat referrals of patients from physicians and other medical personnel* (his so-called "referral base"). (Emphasis added.)

*Id.* at 337, 631 P.2d at 119.

This line of cases provides a basis by which a professional practice, such as Fred's may be found to have goodwill value. Furthermore, a professional practice's goodwill value may be included in the marital estate for purposes of property distribution pursuant to a dissolution decree. Consequently, in the present case the trial court did not err in considering both tangible and intangible assets in evaluating Southern Indiana.

Even assuming that goodwill should not have been included when evaluating the professional practice, reversible error may still not have been committed by the trial court. This follows from the fact that had goodwill not been considered then the professional practice would have been valued at $105,502.53, according to the testimony of Fred's accountant, Richard E. Schoultz. Additionally, the exclusion of goodwill would have also affected the value of the marital estate, reducing its value to $640,724.53. Consequently, the trial court's award to Carol of $475,000 would have been 74% of the marital estate.

The rule is that the trial court is not required to divide the marital property equally between the parties. *Canaday v. Canady* (1984), Ind.App., 467 N.E.2d 783; *McBride v. McBride* (1981), Ind.App., 427 N.E.2d 1148. Rather, IND.CODE 31-1-

11.5–11 requires the trial court to divide the marital property in a just and reasonable manner. *Wilson v. Wilson* (1980), Ind.App., 409 N.E.2d 1169.[4]

The following cases support the trial court's decision awarding substantially disparate amounts to divorcing parties. *In re Marriage of Dougherty* (1978), 175 Ind. App. 371, 371 N.E.2d 1328 ($19,500 to one party and $5,400 to the other party); *Wilcox v. Wilcox* (1977), 173 Ind.App. 661, 365 N.E.2d 792 (substantially all of marital assets to one party); *In re Marriage of Lewis* (1977), 172 Ind.App. 463, 360 N.E.2d 855 ($34,000 to one party and $2,000 to the other party).

The issue then is whether the award is in excess of the marital estate. An award in excess of the marital estate has been held to be an abuse of discretion. *In re Marriage of Salas* (1983), Ind.App., 447 N.E.2d 1176; *Armstrong v. Armstrong* (1979), 181 Ind.App. 343, 391 N.E.2d 855. Therefore, even assuming that the trial court incorrectly valued Fred's share of Southern Indiana, which we do not, the resulting award was still not in excess of the marital estate. Consequently, the awarding of disparate amounts to Carol and Fred would not in itself be reversible error.

■ Turning to the final hearing, the trial court heard testimony from four accountants, two on behalf of Carol and two on behalf of Fred, concerning the value of Fred's interest in Southern Indiana. Three of the accountants included in their evaluations some intangible or goodwill value. The four accountants' testimony established a range for Fred's interest in Southern Indiana between $122,600 and $777,193. The trial court determined that the value for Fred's interest was $400,000.

The trial court's determination is not clearly against the logic and effect of the facts and circumstances before the court. *Chestnut, supra.* We presume that the trial court considered all the evidence of record and properly applied the statutory factors. *Id.* Therefore, Fred has shown

no error by the trial court concerning this determination.

**B. Pension Plan**

Fred further contends that the trial court erred in determining that his share in Southern Indiana's pension/profit sharing plan (the plan) was includable in the marital estate. Alternatively, Fred argues that if the plan was includable in the marital estate then the trial court erred in determining its value.

■ Property subject to distribution in a dissolution proceeding is defined as all the assets of either party or both parties. Included in that definition would be a present right to withdraw pension or retirement benefits. IND.CODE 31–1–11.5–2(d).

Fred claims that the only evidence that the plan existed was Carol's Exhibit 7 which contained stipulated figures as to the value of Fred's interest in the plan. Fred contends that no other evidence was introduced indicating Fred's interest was vested or whether there was a present right to withdraw benefits. However, when Fred was cross-examined he testified that if he were to withdraw money from the plan before retirement, he would have to pay an early withdrawal penalty. Fred further testified that it was his personal desire not to touch the plan until retirement. *Record* at 759–763.

We infer from Fred's testimony that he had a present right to withdraw benefits from the plan. The possibility that tax consequences would result from the withdrawal of money from the plan does not change the asset's character. *Qazi v. Qazi* (1986), Ind.App., 492 N.E.2d 692. Therefore the evidence supports the conclusion that the plan funds were vested for purposes of dissolution and properly includable in the marital estate.

■ Fred finally claims that the evidence showed the value of the plan upon liquidation was $118,779.45 and not $300,000 as

---

**4.** This statute was amended by 1987 legislation to create a rebuttable presumption that an equal division of the marital property is just and rea-

sonable. This amendment has no application here.

the trial court found. In addressing this question we look only to the evidence most favorable to the judgment and will not reweigh the evidence. *Morphew, supra.* The trial court was presented with evidence of the plan's value through Carol's Exhibit 7. Based on this evidence the trial court did not err in determining Fred's interest in the plan. The trial court did consider the tax consequences inherent to such a plan, reducing Fred's interest from $347,460 to $300,000. Furthermore, since the trial court's judgment did not require the liquidation of the plan, the trial court was correct in not subtracting from Fred's share the total tax liability noted in Carol's Exhibit 7. *Qazi, supra.* Consequently, Fred has failed to show error by the trial court.

## II. *Child Support*

Fred contends that the trial court erred in regards to the amount of child support awarded. IND.CODE 31-1-11.5-12(a) specifies four factors which a trial court must consider when making an order for child support:
  (1) [T]he financial resources of the custodial parent;
  (2) the standard of living the child would have enjoyed had the marriage not been dissolved or had the separation not been ordered;
  (3) the physical or mental condition of the child and the child's educational needs; and
  (4) the financial resources and needs of the noncustodial parent.

The determination of proper child support is in the sound discretion of the trial court, and will be overturned only when it is against the clear logic and effect of the circumstances. *Wright v. Wright* (1984), Ind.App., 471 N.E.2d 1240 *trans. denied.*

██ Fred asserts that the child support order awarding $435 per week was greater than the needs and requirements of the children pursuant to the evidence introduced by Carol and which he conceded to be $409 per week.

There was evidence that Fred's income was approximately $200,000 per year, and that Carol, as the custodial parent, had recently obtained a job with an annual income of $18,000. In addition, the trial court heard testimony that prior to the separation Carol had been a full-time wife, mother, and homemaker for 10 years. Finally, there was evidence that since birth the children had wanted for naught, having lived in a prestigious home and neighborhood prior to their parent's separation. Therefore, it was entirely within the discretion of the trial court to enter a child support order of $435 per week. This order would help insure that the children would continue to have the same standard of living had the marriage not been dissolved. Therefore, Fred has shown no error by the trial court on this issue.

## III. *Security For The Judgment*

██ Fred contends that the trial court erred in ordering Fred to grant Carol a security interest in his share of the plan to secure the property judgment, and erred in ordering Fred to purchase life insurance naming his children as beneficiaries to secure his support obligation.

Concerning these assertions, IND.CODE 31-1-11.5-15 provides:
  Security for Payment: Upon entering an order pursuant to section 11 or 12 of this chapter, the court *may provide for such security, bond or other guarantee* that shall be satisfactory to the court to secure the obligation to make child support payments or to secure the division of property. (Emphasis added.)

This court faced the issue of security for payment in *In re Marriage of Davis* (1979), 182 Ind.App. 342, 395 N.E.2d 1254, *trans. denied.* There the court in noting the above statute stated:
  The statutory language obviously affords the court the broadest possible discretion in requiring security for the payment of support and the division of marital property. As we have made clear throughout this opinion, we will not substitute our judgment for that of the trial court. (Footnote omitted.)

182 Ind.App. at 350, 395 N.E.2d at 1259. In light of this statutory discretion and the

fact that the trial court has an obligation to insure the children's best interests, we are unable to find that the trial court abused its discretion.

## IV. *Admission of Evidence*

Fred claims the trial court erred in admitting certain rebuttal evidence offered by Carol which did not rebut any evidence submitted by Fred and which was based in part on hearsay. In addition, he asserts that the trial court erred in admitting a publication without proper foundation and without the author being present.

■ Concerning the admission of rebuttal evidence, Fred's claim is in reference to Gunars Norkus's (Norkus) testimony concerning James Alerding's (Alerding) testimony. *Record* at 881–95. Both individuals are C.P.A.'s. The former was a witness for Carol, the latter a witness for Fred. Reviewing the record, Norkus's testimony clearly was in rebuttal to Alerding's earlier testimony. Norkus was found qualified to testify as an expert in evaluating small businesses. Consequently, he could rely on hearsay information along with personal observation to formulate his opinion, provided the hearsay relied upon was the type customarily relied upon by such experts. *Brant Const. Co., Inc. v. Lumen Const. Co., Inc.* (1987), Ind.App., 515 N.E.2d 868; *Clouse v. Fielder* (1982), Ind.App., 431 N.E.2d 148. Norkus relied upon information supplied by the AMA Department of Practice Management (AMA). That department had statistical studies on compensation for ENT's. Specifically, Norkus relied on interpretative information supplied by AMA personnel concerning net professional profit. Such evaluative information, albeit hearsay, arguably is customarily relied upon by experts such as Norkus to evaluate business practices.

■ Finally, concerning Norkus's testimony as to future tax law changes, the admission of this evidence was not prejudicial to Fred. The trial court decision did not require the plan to be liquidated. Consequently, the trial court was only required to consider the tax consequences, from making withdrawals from the plan, in effecting a just and reasonable property division. Therefore, despite Norkus's testimony, the trial court did not err in valuing the plan.

■ Fred finally contends that the trial court erred in the admission of the publication "Attorneys Guide to Valuing," *Record* at 300–01, during the testimony of Larry D. Cady. He asserts that the publication was admitted without proper foundation and without the author being present. Fred makes no argument that he was prejudiced or harmed by the publication. Absent a showing of actual harm there is no basis for reversal. *Hebel v. Conrail, Inc.* (1985), Ind., 475 N.E.2d 652. *Ludwig v. Ford Motor Co.* (1987), Ind.App., 510 N.E.2d 691. Therefore, Fred has shown no reversible error on this issue.

For the above reasons, this cause is affirmed.

Judgment affirmed.

SHIELDS, P.J., and ROBERTSON, J., concur.