Helen Anna MELNIK, Appellant
(Petitioner Below),

v.

George Wesley MELNIK, Appellee
(Respondent Below).

No. 2–280A35.

Court of Appeals of Indiana,
Fourth District.

Dec. 24, 1980.

Mary Beth Ramey, Indianapolis, Mary Louise Baker, Muncie, for appellant.

Marion W. Withers and Michael R. Withers, Anderson, for appellee.

MILLER, Judge.

The instant litigation involves an appeal from a property distribution and maintenance determination pursuant to a dissolution of the marriage of petitioner–appellant Helen Anna Melnik and her former husband, respondent–appellee George Wesley Melnik. In this action, the wife contends the trial court improperly refused to award her maintenance, as permitted by Ind.Code 31–1–11.5–9(c), that it erred in charging $25,879.90 against her share of the parties' assets, and that certain shares of stock should have been included in the marital assets. We affirm.

Taken in the light most favorable to the judgment below, the facts are as follows: The parties' 39–year marriage commenced on June 28, 1940 at which time George Melnik operated an unclaimed freight business. Although Helen Melnik initially worked full–time in that business she later discontinued such employment (except for "fill in" work) to raise the two children born to the marriage, both of whom were emancipated prior to the final dissolution. Acting as a partnership, the Melniks later acquired, in 1950, an upholstering repair business, which enterprise was later sold for $10,000, although they apparently retained the building in which it was housed and leased it to the new proprietor. Thereafter, in 1964, the freight business burned, and from the insurance proceeds the Melniks acquired numerous stocks and bonds. As is evident from the trial court's findings, summarized in part below, the parties also acquired additional property during their marriage, including two pieces of real estate valued at some $45,000 and $38,000, which were divided between the litigants. The total of their assets was in excess of $400,000.

There was further evidence at the hearing, relating to the issue of a requested maintenance award, that Helen Melnik, who was then 64, had had two operations during the marriage to remove spinal disks, and that she had developed osteoarthritis of the spine, a degenerative joint disease resulting in frequent and considerable pain. Her physician, who stated she also was afflicted with a hiatal hernia, stenosis of the urethra, abnormal glucose metabolism, and elevated blood pressure, concluded her physical condition would not permit consistent employment, and that "I wouldn't want a person with her problems working for me because of possible absenteeism."

In addition, there was also evidence, in the form of George Melnik's testimony, that he once had infantile paralysis, that he could not stand on his feet for long periods of time, and that such condition had contributed to his inability to obtain employment during the two years prior to the

hearing.[1] At that time, his age was 68. He also testified he was nearly deaf in one ear and nearly blind in one eye.

The parties to this action were separated on April 4, 1978. Sometime after that date, Helen Milnik withdrew a Certificate of Deposit in the amount of $40,000 and made gifts of over $25,000 to the parties' grandchildren, the children of their daughter, Barbara Weil. Such gift, as noted hereafter, was apparently regarded by the trial court as part of Helen Melnik's share of the marital assets.

Significant to this appeal, the court–after noting assets consisting of stocks, bonds, life insurance policies and the like totalling over $400,000–determined in its findings that "[t]he assets of the parties should be equally divided between them," and that "[b]ecause of the age and physical condition of the respondent [George], respondent should not be obligated to pay any future maintenance payments to petitioner." Accordingly, the judgment of the lower court awarded Helen Melnik property valued at some $203,000, and awarded to George Melnik a like amount, plus approximately $10,-000 for payment of both parties' attorney fees.

*ISSUE I*

Helen Melnik first contends the trial court, in refusing to order maintenance payments on her behalf, acted contrary to law by basing its decision on the health of the spouse who is to pay, rather than the recipient spouse. She further asserts that the failure to award maintenance was contrary to the evidence.

Our analysis begins with the relevant language of IC 31–1–11.5–9(c), which states as follows:

> "The court may make no provision for maintenance except that when the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of such incapacitated spouse to support himself or herself is materially

affected, the court may make provision for the maintenance of said spouse during any such incapacity, subject to further order of the court."

Helen Melnik, in contending the trial court acted contrary to law when it denied maintenance to her because of her husband's age and physical condition, argues at the outset that the trial court should have made an "initial determination" whether or not her ability to support herself was impaired. In this regard, she quotes *Temple v. Temple*, (1975) 164 Ind.App. 215, 219–220, 328 N.E.2d 227, 229–230, where the Court stated:

> "We determine that the statute calls for an initial factual determination whether a spouse's self–supportive ability is materially affected by physical or mental incapacity. If the spouse's self–supportive ability is materially impaired, the propriety of a maintenance award and the amount thereof should then be determined after considering such factors as the financial resources of the party seeking maintenance (including matrimonial property apportioned to her), the standard of living established in the marriage, duration of the marriage, and *the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.*" (Emphasis added.)

While Helen Melnik does not specifically argue the court should have made a special *finding* regarding her ability to support herself, as opposed to merely "deciding" or "determining" such question, we note various decisions of this Court have at least suggested such a finding may be essential to the proper *award* of payments which are arguably (or conceivably) intended to serve as maintenance, although not clearly identified as such. *E. g., Savage v. Savage*, (1978) Ind.App., 374 N.E.2d 536; and *In re Marriage of Lewis*, (1977) Ind.

---

1. Neither party was employed on the date of the hearing, although George Melnik received social security benefits.

App., 360 N.E.2d 855.[2] It is also clear, however, that even when maintenance is awarded, no such *finding* is required under either the statute or by case law so long as the court expressly addresses the question and designates its award as maintenance, since "[t]he 'finding' required by the statute is implicit in the grant or denial of maintenance and need only be supported by sufficient evidence." *Farthing v. Farthing,* (1978) Ind.App., 382 N.E.2d 941, 944. In the instant case involving substantial evidence of Helen Melnik's incapacity and an express denial of maintenance for the sole reason that her husband, the paying spouse, was himself old and infirm, we believe it also may reasonably be implied, based on similar reasoning, that the trial court appropriately determined there was some material impairment of her ability to support herself, but that George Melnik should nevertheless be relieved of the obligation of making maintenance payments.

Moreover, we are aware of no compelling authority, including the language of the statute itself, which has expressly required such special findings (in the absence of a proper motion) in a case where a request for maintenance was *denied.* As noted above, the discretionary statute permitting such awards states merely that a court may not *provide for* maintenance payments unless it first "finds" a spouse to be physically or mentally incapacitated. In this regard, we note the opinion in *Temple v. Temple, supra,* which did not reveal whether the lower court had made special findings on the issue of maintenance,[3] simply concluded the trial judge did not abuse his discretion in denying the relief requested, and that "[t]here appears to be no sound reason why the traditional discretionary power of the trial court should not be exercised when determining whether an award of mainte-

nance is proper under IC 31–1–11.5–9(c)." *Id.* at 220, 328 N.E.2d at 230.

■ Nor was it error, as Helen Melnik contends, for the trial court to base the ultimate determination it did make on the age and physical capacity of George Melnik, rather than giving sole consideration to the health of his wife. As noted above, the appropriate statute merely provides the court "may" make provision for maintenance when it finds a spouse has been mentally and physically incapacitated, and in *Temple v. Temple, supra* at 220, 328 N.E.2d at 230, such language was interpreted by the Court to permit consideration of "the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." Clearly, there was evidence concerning the age and physical capacities of George Melnik from which the court could reasonably have concluded it was inappropriate, under the circumstances, to make a maintenance award to Mrs. Melnik in addition to the approximately $203,000 which she received as part of the property settlement. Accordingly, we find no error in the court's decision concerning maintenance.

## ISSUE II

A second contention advanced by Helen Melnik is that the trial court improperly charged against her share of the marital property a gift of over $25,000 which she made for the benefit of the parties' grandchildren after she and her husband were separated.[4] In particular, she contends that in light of the trial court's "finding" that "[t]he assets of the parties should be equally divided between them," it acted contrary to the evidence by further ordering she should have as her "sole and separate property" some $25,879.90 sent to Barbara Weil

2. *See generally Farthing v. Farthing,* (1978) Ind.App., 382 N.E.2d 941, 944 n.2, where the Court states, "[w]hen the award is designated other than maintenance by the trial court, case law apparently requires that petitioner have *shown* and the trial court have specifically found sufficient incapacity and material effect on self–supportive ability."

3. Perhaps significantly, the appellant in that case argued merely that the *decree* was not supported by sufficient evidence and thus was contrary to law, and that the trial court abused its discretion by choosing to "ignore" uncontroverted medical testimony.

4. She explained such gift was made because "I've never had any money to give."

for the parties' grandchildren, since Helen Melnik did not possess those assets when the decree of dissolution was entered. She further suggests there was no evidence she had expended any more than $25,600 in gifts for her grandchildren.

In responding to these arguments, we first state the obvious: namely, that the trial court's findings and conclusions should be construed, so far as it is reasonably possible, in an harmonious manner, rather than discordantly. Thus, we believe the trial court's decision to "equally" divide the assets must be viewed in light of its further, specific determination that Helen Melnik should be charged the sum sent to her daughter on behalf of the parties' grandchildren. It may reasonably be presumed, we think, that it would not have made its "equal" distributions if it were viewing the parties' assets sometime after the gift had been made.

Additionally, we do not believe it was error for the court to distribute the parties' assets which were acquired before their separation (as it apparently did) giving due consideration to their individual acts of dissipation occurring after such separation. See IC 31–1–11.5–11 (pertaining to disposition of property) [5] *and see, e. g., In re Marriage of McManama*, (1980) Ind., 399 N.E.2d 371; and *see generally Eppley v. Eppley*, (1976) 168 Ind.App. 59, 67, 341 N.E.2d 212, 218, where the Court concluded marital property need not be *valued* at the time of a final hearing, rather than as of the date of separation, since "such an inflexible rule might have drawbacks in that it could encourage parties to secrete, conceal or otherwise divest themselves of certain properties during the period between separation and divorce so as to distort the true nature and value of marital property." Helen Melnik cites no decision requiring a different result in the instant case, and indeed presents no authority at all

supporting her argument regarding the division of marital property, in contravention of Ind. Rules of Procedure, Appellate Rule 8.3(A)(7) requiring a cogent argument on all points raised.

She also contends on appeal that even if the court could consider gifts made to the grandchildren as part of her half of the marital assets, there was no evidence those gifts exceeded $25,600 as opposed to the approximately $25,900 found by the lower court.[6] We must conclude, however, that this argument was waived, since it was not properly brought to the trial court's attention (and thus preserved for our review) by the mere assertion in her Motion to Correct Errors that "[t]he judgment is contrary to the evidence, in that . . . [t]he evidence was uncontroverted that petitioner did not have $25,879.90." See A.P. 8.3(A)(7). As acknowledged by Helen Melnik in this argument, the trial court's judgment looked beyond those assets which she actually had at the time of the final decree to those which she had disposed of after the separation, which apparently included the proceeds of a $40,000 Certificate of Deposit. If, in computing the amount of the specific gifts which Helen Melnik made to her daughter for the benefit of the grandchildren, the trial court made an error of some $300, we believe such error should have been directly challenged in the Motion, in contrast to a general assertion that Helen Melnik did not "have" the money when the dissolution decree was entered. Accordingly, we find no error which has properly been raised in this Court.

*ISSUE III*

As her final argument, Helen Melnik contends the trial court should have included 123 shares of common stock of the Irving Trust Company (valued at nearly $4,000) in its computation of the parties' marital assets, apparently because she views the evidence as uncontroverted that such stock

---

**5.** That statute provides, in part, in subsection (a) that a court should distinguish between property acquired before and after a final separation, and further directs, in subsection (b)(4), such court to consider "the conduct of the parties during the marriage as related to the

disposition or dissipation of their property; . . . ."

**6.** As noted above, that court "awarded" her $25,879.90 as "[m]onies paid to Barbara Weil."

was owned by the parties. While it is true, as she contends, that George Melnik stated in his answers to interrogatories that he owned such stock, we note that at trial he suggested an error had been made because Irving Trust was "probably a paying agent for Wisconsin Gas" [7] and that he had never in fact owned any shares of Irving Trust. Under these circumstances, where the only testimony relating to the purported marital property was conflicting, we conclude the trial court did not abuse its discretion as fact–finder in failing to include such shares of stock as part of the parties' estate.

The judgment of the trial court is affirmed.

YOUNG, P. J., and CHIPMAN, J., concur.

---

7. In this regard, we observe the court's judgment recites that 123 shares of stock of the Wisconsin Gas Company were awarded to George Melnik as part of the property settlement.