**Pamela Rose DAHNKE, Appellant (Petitioner Below),**

v.

**Stephen J. DAHNKE, Appellee (Respondent Below).**

No. 12A04–8709–CV–292.

Court of Appeals of Indiana, Fourth District.

March 16, 1989.
Rehearing Denied May 31, 1989.

Jack R. O'Bryan, Lafayette, for appellant.

Louis Pearlman, Jr., Pearlman & Chosnek, Lafayette, for appellee.

CONOVER, Presiding Judge.

Petitioner–Appellant Pamela Rose Dahnke (Pam) appeals those portions of her dissolution decree which she deems contrary to law and fact.

We reverse and remand.

Pam presents three issues for our review. Because we reverse, we discuss only two, namely,

1. whether the trial court erred by failing to find her education was interrupted; and

2. whether the trial court erred by failing to make special findings of fact concerning Steven J. Dahnke's (Steve) life insurance policy.

Pam became pregnant by Steve in December, 1971. She then dropped out of high school, missing her last semester. However, she walked through graduation exercises with her class in May, 1972, because she had accumulated enough credits to receive her high school diploma before she dropped out.

She and Steve were married in February, 1972. Pam wanted to go to college, but could not because she was pregnant. The couple's first child, Jason Shane, was born September 9, 1972. Their next child, Tamara Michelle, was born November 5, 1975, and their last child, Nathan J., was born July 8, 1984.

During the marriage Pam worked for six months as a receptionist earning a minimum wage. Pam left that job due to the expense connected with her employment and because Steve felt it would be best if she stayed home with Jason. Later, Pam again tried working, this time as a cashier. She left this job after 1–½ years, however, again to stay home with the children. Nevertheless, she continued supplementing

the family's income by babysitting at home. Also, she helped with various duties on the farm such as bailing hay, and milking, feeding, castrating and vaccinating the animals. Before their third child was born Pam again expressed an interest in attending college. However, she could not because she had sole responsibility for all homemaking duties and raising the children.

Steve worked on his father's farm and in his father's construction businesses. His annual salary totaled approximately $18,000 per year. A $50,000 life insurance policy on his life was purchased. Steve's father provided the family with housing, beef, firewood, milk, eggs, land, farm buildings, income from the sale of animals and from renting and farming land. Pam filed this action after discovering Steve was having an adulterous relationship after more than 14 years of marriage. The couple separated September 27, 1986.

In December, 1986, Pam took the Scholastic Aptitude Test (S.A.T.), and the Strong Campbell Test. The latter indicated she had an interest in and aptitude for the medical field. Thereafter, she started taking general education courses at Purdue University. Alan Dye, an expert in counseling, testified Pam's academic record and S.A.T. score qualified her for admission to Purdue's nursing school.

The trial court denied Pam's request for rehabilitative maintenance, and failed to discuss Steve's life insurance policy in its special findings of fact. It denied Pam's motion to correct errors which asked the court to consider for the first time evidence concerning the agreed judgment which had been entered in a collection case against Steve and Pam without Pam's knowledge or consent. The trial court awarded Pam custody of the children, $416.00 per month in child support, one-half of the proceeds (approximately $2,500) from the sale of livestock, a 1977 Chevrolet Impala worth $500, and a three wheeled vehicle. It awarded Steve a 1980 Chevrolet truck, miscellaneous farm equipment valued at $11,175, a snowmobile, a freezer, and hay and feed. He was ordered to pay Pam's attorney fees for this action and the debts of the marriage.

Pam appeals.

Pam first contends the trial court erred in denying her request for rehabilitative maintenance [1] because it erroneously found there was no interruption in her education. We agree.

■ Trial courts are vested with broad discretion in this area. *In re Marriage of Dillman* (1985), Ind.App., 478 N.E.2d 86, 87. Discretion is a privilege afforded a trial court to act in accord with what is fair and equitable in each case. *Id.* We will reverse only for abuse of that discretion. *Temple v. Temple* (1975), 164 Ind.App. 215, 328 N.E.2d 227, 230.

One of the strongest presumptions on appeal is the trial court acted correctly. *Id.* However, abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable and actual deductions to be drawn therefrom. *Dillman, supra*, at 87. An abuse of discretion will also be found when a trial court has misinterpreted the law or when the trial court disregards evidence of

---

1. I.C. 31-1-11.5-11(e) at that time provided a court could make the following findings concerning rehabilitative maintenance.

  (3) After considering

    (A) the educational level of each spouse at the time of marriage and at the time the action is commenced;

    (B) whether an interruption in the education, training, or employment of a spouse who is seeking maintenance occurred during the marriage as a result of homemaking or child care responsibilities, or both;

    (C) the earning capacity of each spouse, including educational background, training, employment skills, work experience, and length of presence in or absence from the job market; and

    (D) the time and expense necessary to acquire sufficient education or training to enable the spouse who is seeking maintenance to find appropriate employment;

a court may find that rehabilitative maintenance for the spouse seeking maintenance is necessary in an amount and for a period of time that the court considers appropriate, but not to exceed two (2) years from the date of the final decree.

factors listed in the controlling statute. *Dillman, supra.* 87–89.

In its findings of fact the trial court stated

22. That the educational level of the Husband and Wife at the time of the marriage and at the commencement of this action was the same and unchanged and an interruption in the education of the Wife did not occur during the marriage as a result of homemaking or child care responsibilities.

23. That the wife's request for maintenance is denied.

(R. 215). While the first portion of finding number 22 is correct, the uncontradicted evidence clearly establishes Pam's education was interrupted during their marriage due to her homemaking and child care responsibilities.

The uncontradicted facts establish Pam did not participate in her last semester of high school because she was pregnant. She left high school one semester early to marry Steve and have her first child. But for her pregnancy and marriage, Pam would have attended her last semester of high school. Without question, the trial court's finding Pam's education was not interrupted because of her homemaking and child care responsibilities is clearly erroneous. Upon remand the weight of this fact must be balanced together with the other statutory factors listed in I.C. 31–1–11.5–11(e)(3) to determine whether an award of rehabilitative maintenance is appropriate. The dissent's emphasis on no showing of applying to colleges and no S.A.T. tests taken is misplaced, we believe. The question is whether her education was interrupted, not whether her college education was interrupted. It is uncontested she failed to attend her last semester in high school due to her marriage. That she had enough credits to graduate is of no moment because such interruption occurred. A trial court cannot ignore competent, uncontroverted evidence. *Gossett v. Auburn National Bank of Auburn* (1987), Ind.App., 514 N.E.2d 309, 312, citing *Steenhoven v. College Life Ins. Co.* (1984), Ind.

App., 458 N.E.2d 661, 666, n. 13. For it to do so was error.

■ We believe the legislature's intent in this area is eminently clear. Generally in our society, an individual's opportunity for advancement and income expectation levels in the business or professional field chosen are directly proportional to the level of education such individual achieves in life. When a spouse gives up his or her educational pursuits to assume the homemaking and child rearing responsibilities incident to marriage but the marriage either in the near or far term fails, it is unjust and inequitable to leave the educationally-impaired spouse without an opportunity to achieve the job market skills he or she could have reached but for the interruption of such spouse's education. Our legislature intended an educationally-impaired spouse should be made as whole as possible within I.C. 31–1–11.5–11's time constraints for two reasons: (a) as to society in general, such policy tends to relieve the pressures on our already overburdened social welfare agencies, and (b) as to the individual, justice and equity require no less. In sum, justice is served when that statute is applied and enforced by trial courts in appropriate cases.

Pam next contends the trial court erred in failing to make a special finding of fact concerning Steve's life insurance policy. We agree.

■ "Special findings," i.e. findings which contain all facts necessary for recovery by a party in whose favor conclusions of law are found, are adequate if sufficient to support a valid legal basis for the result reached by the trial court. *Data Processing Services, Inc. v. L.H. Smith Oil Corp.* (1986), Ind.App., 493 N.E.2d 1272, 1274. We will not look to the evidence to locate findings which should have been made by the trial court. *Id.* When a written request for special findings is filed with the court prior to the admission of evidence, the trial court is required to make complete special findings of fact. *Jay Clutter Custom Digging v. English* (1979), Ind.App., 393 N.E.2d 230, 233.

Here, Pam requested special findings of fact prior to the admission of evidence. However, the trial court failed to make special findings of fact concerning Steve's life insurance policy. Its failure to do so was error.

Reversed and remanded with instructions to

(a) enter findings of fact consistent with this opinion regarding interruption of Pam's education,

(b) reconsider awarding Pam rehabilitative maintenance in light of its new findings and the provisions of I.C. 31–1–11.5–11,

(c) enter findings of fact consistent with this opinion regarding Steve's life insurance policy, and

(d) modify the judgment entered below accordingly.

MILLER, J., concurs.

SHIELDS, P.J., concurs in result in part and dissents in part with separate opinion.

SHIELDS, Judge, concurring in result in part and dissenting in part.

I vote to reverse the judgment of the trial court on the issues of rehabilitation maintenance and support and remand for further consideration of those issues and I vote to affirm that judgment on the issue of the division of property.

The three issues presented by Pamela Rose Dahnke (Pam) for review are:

1. did the trial court err in denying her request for rehabilitative maintenance;

2. did the trial court err in failing to order Stephen J. Dahnke (Steve) to continue an existing insurance policy in full force and effect for the sole benefit of the children of the marriage; and

3. did the trial court err in denying Pam relief from the judgment based upon her claim of newly discovered evidence.

I.

Pam's argument that the trial court erred in denying her request for rehabilitative maintenance has two prongs: 1) the trial court's finding that her education was not interrupted by homemaking or child care duties is contrary to law and 2) the trial court erroneously applied the law.

The trial court did not err in finding

22. That ... an interruption in the education of the Wife did not occur during the marriage as a result of homemaking or child care responsibilities.

Record at 215.

Although Pam testified to her intent to continue her education after graduation from high school, there is also evidence that at the conclusion of her first semester of her senior year in high school she had neither taken the Scholastic Aptitude Test nor applied for admission to any college or other institution for additional or specialized training. Further, the record is devoid of any evidence Pam had any specific or even general plan how she was going to continue her education or that she had even considered or investigated her options. In other words, while she may have had the desire to further her education, that desire had not been pursued or formalized to the extent that the trial court was required, as a matter of law, to determine that an interruption in her education occurred. Therefore, despite her testimony that she planned to go to college, the evidence supports the trial court's conclusion that her "intent" was speculative at best and, therefore, that her education was not interrupted because she in fact attained her high school diploma. It is the exclusive function of the trial court to weigh the evidence and judge the credibility of the witnesses, and this court will not disturb the trial court's finding. Reversal on the first prong of Pam's argument, therefore, is not warranted.

Pam's second argument, however, is meritorious. She argues the trial court's judgment denying her rehabilitative maintenance is erroneous because it is based upon an error of law in that the trial court failed to consider IC 31–1–11.5–11(e)(3)(C) and (D) and to make the required findings of fact. We agree.

IC 31–1–11.5–11(e)(3) (1986 Supp.) provides:

(e) A court may make the following findings concerning maintenance:

. . . . .

(3) After considering:

(A) the educational level of each spouse at the time of marriage and at the time the action is commenced;

(B) whether an interruption in the education, training, or employment of a spouse who is seeking maintenance occurred during the marriage as a result of homemaking or child care responsibilities, or both;

(C) the earning capacity of each spouse, including educational background, training, employment skills, work experience, and length of presence in or absence from the job market; and

(D) the time and expense necessary to acquire sufficient education or training to enable the spouse who is seeking maintenance to find appropriate employment;

a court may find that rehabilitative maintenance for the spouse seeking maintenance is necessary in an amount and for a period of time that the court considers appropriate, but not to exceed two (2) years from the date of the final decree.

IC 31–1–11.5–11(e)(3) is written in the conjunctive, *i.e.*, in exercising its discretion concerning rehabilitative maintenance the trial court is directed to consider each of the four (4) enumerated factors. Therefore, no one factor precludes or requires the exercise of the trial court's discretion in a predetermined manner. Thus, the fact that the trial court concluded an interruption in the education of Pam did not occur does not preclude it, as a matter of law, from awarding rehabilitative maintenance. Here, however, the trial court's findings evince that it concluded otherwise.

A request for special findings was filed under Indiana Rules of Procedure, Trial Rule 52(A).[1] Nevertheless, the trial court made findings only with reference to subsection (A) and a part of subsection (B) of IC 31–1–11.5–11(e)(3), although there is evidence in the record pertaining to Pam's contention under (B) that her *employment* was interrupted during the marriage as a result of her homemaking and child care responsibilities. In addition, the record contains evidence relevant to subsections (C) and (D) of the same statute. This absence of special findings compels the conclusion that the trial court determined it could not consider the evidence and, therefore, did not need to make findings on the evidence because a predicate for rehabilitative maintenance, an interruption in Pam's education, had not occurred. In so concluding, the trial court committed an error of law. The exercise of discretion based upon an error of law constitutes an abuse of discretion. *In re Marriage of Dillman* (1985), Ind.App., 478 N.E.2d 86, 88. Therefore, the trial court's judgment on this issue must be reversed.

## II.

Pam also asserts the trial court erred in failing to order Steve to continue an existing insurance policy in full force and effect for the sole benefit of their three (3) minor children. I concur in the majority's opinion that the trial court's judgment is fatally defective on this issue because the trial court failed to make any findings relevant to this issue as required pursuant to the request for special findings. As Pam correctly asserts, this is a *support* issue. *See Hunter v. Hunter* (1986), Ind.App., 498 N.E.2d 1278. Despite substantial evidence in the record introduced by the parties on the issue of support, the trial court failed to make any specific findings of facts relevant to the issue and, instead, merely ordered a sum as support.

## III.

Finally, Pam contends the trial court erred in not granting her a new trial on the issue of the property division based upon her claim of newly discovered evidence. I

---

**1.** "Upon ... the written request of any party filed with the court prior to the admission of evidence, the court in all actions tried upon the facts without a jury ... shall find the facts specially and state its conclusions thereon." TR. 52(A).

dissent from the majority's failure to address this issue and vote to affirm the trial court's judgment on the property division.

The evidence which Pam asserts is newly discovered fails to satisfy the criteria for newly discovered evidence in at least one aspect: she failed to show that the evidence could not have been discovered at the time of trial with due diligence. The facts surrounding the *Ag Max*[2] judgment against Steve and Pam were clearly discoverable: the judgment had been entered prior to the dissolution hearing; Pam acknowledged at the hearing that she knew of the debt; and the fact of the judgment, although not its details, were divulged during the dissolution hearing. Thus Pam had the opportunity, which she did not take, to pursue the detail as to whom the judgment was against.[3]

The claim that Steve's bankruptcy is newly discovered also fails. In fact, Pam testified at trial that Steve had told her he was going to pursue bankruptcy relief after the conclusion of the dissolution proceeding. While Steve denied making this statement to Pam, he testified that he hoped to work things out so as to avoid bankruptcy. Thus, this is a credibility question as opposed to a newly discovered evidence claim—*i.e.,* the evidence Steve pursued bankruptcy is cumulative of Pam's testimony at trial that he intended to do so. As such, it may not be asserted as grounds for reconsideration of the judgment on the division of property.

For the above stated reasons, I vote to reverse the judgment of the trial court on the issues of rehabilitative maintenance and support and remand to the trial court for further consideration of those issues with instructions to enter special findings of fact and conclusions; in all other matters the decision of the trial court is affirmed.

---

2. Pam asserts Steve and his attorney misled the court and Pam concerning a judgment allegedly entered without notice to Pam that existed at the time of the dissolution proceeding in favor of Ag Max and against Steve *and* Pam.

3. Much of Pam's argument on this issue properly belongs in a Trial Rule 60(B) motion attacking the judgment against her rather than in this action.