**Laverne AXSOM, Appellant,**

v.

**Harold AXSOM, Appellee.**

**No. 53A04–8908–CV–378.**

Court of Appeals of Indiana, Fourth District.

Jan. 28, 1991.

Ronald L. Chapman, Cotner, Andrews, Mann & Chapman, Bloomington, for appellant.

Thomas M. McDonald, McDonald & Dakich, Bloomington, for appellee.

MILLER, Presiding Judge.

After thirty-five years of marriage, Laverne and Harold Axsom were divorced on August 22, 1988. Laverne, who is disabled, appeals the trial court's judgment, claiming the court erred in (1) failing to award her spousal maintenance due to her disability and (2) distributing the marital property, which included the value of Harold's barber shop business.

We affirm the trial court's denial of spousal maintenance and the court's award of Laverne's disability pension to her as her sole property. However, we can find no basis for the court's valuation of Harold's business and therefore reverse and

remand for further findings of fact, which may affect the distribution of the marital assets.

The issues raised by Laverne in her appeal are:

I.  Whether the trial court erred in failing to award spousal maintenance to Laverne;

II.  Whether the trial court erred in concluding that Laverne's disability income benefits were assets of the marriage and subject to division;

III.  Whether the trial court erred in finding that Harold's barber shop has a value of only two-thousand dollars ($2000.00); and

IV.  Whether the trial court erred in making an inadequate monetary award to Laverne pursuant to Indiana Code 31-1-11.5-11.

## FACTS

Laverne and Harold Axsom were married on April 3, 1954. Laverne filed her Petition for dissolution of marriage on August 22, 1988, and dissolution was granted on May 15, 1989. One child was born of the marriage who is now emancipated. Laverne is sixty-one (61) years of age, is disabled and receives disability benefits from Social Security totalling four hundred and thirty-two dollars ($432.00) monthly. Harold owns a barber shop business, which includes four chairs and other barbering equipment. He leases the building and rents out at least two of his four chairs to beauticians—receiving a percentage of their earnings as rent. The court valued the business at two-thousand dollars ($2000.00); however, an expert witness testified that its value was in excess of thirty thousand dollars ($30,000). The net proceeds from the sale of their residence—$54,983.60—was divided equally, after a de-

duction of $10,000.00, which was allocated to Laverne (representing the amount of equity she brought into the marriage). An additional amount of $2,000 was deducted and allocated to Laverne—which presumably represented the value of Harold's business.[1] Laverne also received as her sole property a $10,000.00 certificate of deposit. Each received one of the family cars per the divorce decree; there is still indebtedness on Laverne's car, Harold's is paid off.

The court found that Harold's earning capacity was in the approximate amount of $1575.00 per month and that Laverne had other assets and additional income invested in interest bearing accounts. The court—considering Laverne's other financial resources, assets and property awarded to her by the decree and Harold's marginal ability to provide maintenance for himself—denied Laverne's request for spousal maintenance. All other assets were divided to the parties' satisfaction and are not relevant to this appeal.

## DISCUSSION AND DECISION

### Issue I—Spousal Maintenance

Because Laverne is disabled and without means to support herself, she asserts that the trial court committed reversible error by not awarding her spousal maintenance. "However, even when evidence has been admitted showing mental or physical incapacity materially affecting a spouse's ability of self-support, a grant of maintenance is still optional, within the discretion of the trial court." *Coster v. Coster* (1983), Ind. App., 452 N.E.2d 397, 403 (citing, *Farthing v. Farthing* (1979), 178 Ind.App. 336, 382 N.E.2d 941). The court has the *discretionary* power to grant maintenance when a spouse is disabled. IC 31-1-11.5-11(e)(1).[2]

---

**1.** In the Decree the court found that the barber shop business was a marital asset requiring division by the court. (R. 15) The court further found that the value of the Barber Shop, including equipment, was $2,000. (R. 16). Finally the court ordered:

"7. The business of Respondent as the owner and operator of Crosstown Barbershop shall be Respondent's sole and individual property and

Petitioner shall have no claim or interest therein. Petitioner is hereby awarded the additional sum of $2,000.00, to be deducted from the proceeds of the sale of the parties' residence." (R. 17)

**2.** IC 31-1-11.5-11(e)(1) provides in pertinent part:
"... if the court finds a spouse to be physically or mentally incapacitated to the extent that the

Laverne argues that it was an abuse of discretion for the court to deny her maintenance, citing *Dahnke v. Dahnke* (1989), Ind.App., 535 N.E.2d 172—a recent case dealing with *rehabilitative* maintenance—wherein this court observed that the legislature had two reasons for making provisions for maintenance for an educationally-impaired spouse:

> "(a) as to society in general, such policy tends to relieve the pressures on our already overburdened social welfare agencies, and; (b) as to the individual, justice and equity require no less. In sum, justice is served when that statute is applied and enforced by trial courts in appropriate cases."

*Id.* at 175.

Laverne claims that her situation presents a "paradigm example, fitting squarely within IC 31–1–11.5–11(e)(1)." Appellant's Brief, p. 13. However, as we noted in *Dahnke*, the court below is vested with broad discretion in determining whether an award of spousal maintenance should be made under the facts of the case before it. *Id.*, at 174 (citing *In re Marriage of Dillman* (1985), Ind.App., 478 N.E.2d 86, 87). The trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* An abuse of discretion may also be found when the trial court misinterprets the law or disregards factors listed in the controlling statute. *Id.*

In *Dahnke*, we held the trial court abused its discretion when it ignored competent, uncontradicted evidence relevant to a determination of the need for *rehabilitative* maintenance. We remanded to allow the trial court to balance the previously ignored factor with other statutory factors listed in IC 31–1–11.5–11(e)(3). We did not substitute our judgment for the trial court's.

In *Melnik v. Melnik* (1980), Ind.App., 413 N.E.2d 969, a case similar to the present one, the parties divorced after a 39 year marriage. The wife, Helen, then 64 years old, was disabled due to a degenerative joint disease and other medical problems, which prevented her from obtaining employment. She sought spousal maintenance, but the trial court denied her request because George, her ex-husband, was also disabled and, at age 68, unable to obtain employment. In affirming the trial court's decision, we observed that the statute [3] merely provides that a court may make provisions for maintenance for a disabled spouse. However, we observed that such language permits the court to consider the "ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance." *Id.* at 972, quoting *Temple v. Temple* (1975), 164 Ind.App. 215, 220, 328 N.E.2d 227, 230.

■ In the present case, as in *Melnik*, the trial court did not ignore the evidence. The evidence clearly shows that neither party has substantial income. Clearly, the trial court's characterization of Harold's ability to provide his own maintenance as marginal is supported by substantial evidence. The court recognized Laverne's ability to obtain a job was greatly hampered by her poor health. It further recognized the small amount of social security benefits she receives. However, the court also noted the additional resources available to Laverne because of the divorce settlement. The evidence before the trial court could support a conclusion either way. Given the additional resources available to Laverne, we see merit in the trial court's determination not to completely impoverish Harold. Even though we might have reached a different conclusion than

ability of the incapacitated spouse to support himself is materially affected, the court *may* find that maintenance for that spouse is necessary during the period of incapacity, subject to further order of the court." (emphasis added).

**3.** IC 31–1–11.5–9(c) has been amended since *Melnik* was decided. It now provides that a court "*may* order maintenance in final decrees ... after making findings required under" IC 31–1–11.5–11(e). (emphasis added). The change in the statute would have no effect on the decision.

the trial court, we cannot overrule a judgment supported by the evidence. *Morgan v. Cooper* (1981), Ind.App., 415 N.E.2d 729, 733.

*Issue II—Treating Disability Income as Marital Property*

█ Laverne next asserts that the trial court erroneously awarded her own disability income to her as part of the property settlement. It is Laverne's assertion that this income should not have been considered at all in the division of property. We agree that benefits which cannot presently be withdrawn and are not vested cannot be considered for division in a dissolution. *See* IC 31–1–11.5–2(d). However, we do not agree that the trial court was using these benefits in this manner. In the decree, the trial court found that the parties had agreed between themselves regarding the ownership of and distribution of certain marital assets. One of those assets noted by the court was Laverne's Social Security Disability Income of $432.00 per month, which was awarded to her as her sole and individual property.

While the court may have labeled it a "marital asset", it is clear that the trial court's purpose in stating Laverne's retention of the benefits in the decree was to clarify and reassert an agreement already made by the parties that all rights to these benefits belong to Laverne. The court was not dividing a "marital" asset. We find no error.

*Issue III—Valuation of Business*

Laverne argues that the trial court erred in finding that Harold's barber shop business (including the equipment) has a value of only two-thousand dollars ($2000.00). We agree. The record and findings are devoid of any basis by which the trial court could have valued the business at this figure.

David Charles, a Certified Public Accountant with an Indianapolis accounting firm, testified as an expert witness for Laverne, giving his opinion as to the value of the business. Harold, Laverne, and Kathleen Taylor, a beautician who rented a

chair from Harold, also testified regarding the business. However, Charles was the only witness who placed any actual market value on Harold's business.

Charles testified that he had been with the accounting firm for three and a half years, but had been a licensed C.P.A. since 1982. He was contacted by Laverne's attorney to prepare an evaluation of the Barber Shop from a conservative viewpoint. He testified that he was often called upon to value businesses for purposes such as this and that the conclusion for his appraisal was within the normal guidance of his profession in conducting such appraisals. Charles estimated the business's worth at approximately thirty-thousand four hundred and seventy dollars ($30,470.00) based on the fair market value—what fully-informed, willing seller and buyer would agree to pay, when neither party is acting under a compulsion. Charles testified that he arrived at this figure after he reviewed tax returns from 1980 forward, portions of Harold's deposition testimony and accounting figures provided by Kathleen Taylor. He determined that an appropriate evaluation technique in this case would be based on rental income from each chair, rather than to determine the income generated from Harold. He then used an income capitalization method to calculate the value of the business, based on an investment return of 20 percent. Charles based his figures on renting out three of the four chairs. He used as values for his calculations the amount of rental income paid in 1987 by Kathleen Taylor. He took the rental income per chair, multiplied that times the number of chairs and deducted business expenses as reflected in Harold's tax returns. The difference, the *net* yearly income of about $6,000, was multiplied by a income capitalization multiple of 5 to arrive at the fair market value. In other words, he opined that a willing buyer would anticipate a 20 percent return on his investment and, here, receive $6000 net income annually on the $30,000 purchase price. On cross-examination, he did concede that such an investment might be risky—risk-free in-

vestments run about 9 or 10 percent.[4] He also testified that he had not been involved in the valuation of any barber shops before this one and that he was unaware of any specific barber shops that have been sold.

Harold testified that barber shop businesses in Indiana had declined in number in recent years. He also testified he leased his building and the lease was to expire June 1st following the trial. However, he anticipated there would be another two-year renewal of the lease. On cross-examination, Harold was asked if he was familiar with any barber shops sold in Bloomington in the recent past. He replied that he knew of one person who tried to sell her shop, but went out of business. He added that she had tried to sell the shop for $5,000; however, at that point Laverne's counsel objected to the testimony as "solicitation of obvious hearsay testimony." (R. 176). The court sustained the objection.

Kathleen Taylor worked in the barber shop from July of 1985 until April or May of 1988. She testified that there were four chairs in the shop and that the rent from her chair alone was four-thousand two hundred and ninety dollars ($4,290.00) in 1987. However, she also testified that during a portion of the time she worked in Harold's shop, she was the only person who rented a chair from him.

■ Thus, although the only evidence of a specific market value was Charles' estimate, there is evidence that the assump-

tions on which he relied in making the estimate (the number of chairs rented and the income from each chair) could be questioned. Based on the evidence, the court could have discounted the value of the business as not being worth $30,000, but the discrepancy between the court's valuation of the business and the testimony is so far apart that it appears to be an arbitrary determination. "When there is no evidence supporting the value assigned by the court to the property, then we must find an abuse of discretion." *Feitz v. Feitz* (1989), Ind.App., 533 N.E.2d 1287, 1289 (citing, *In Re Marriage of Sharp* (1981), Ind.App., 427 N.E.2d 690). Because the trial court's valuation is so far from Charles' opinion, and the record does not show any other testimony that would lead to such a low valuation, we remand to the trial court for further findings of fact based on the evidence already before the court and a redetermination of the business's value, and for any reconsideration of the property settlement that may have to be made.

*Issue IV—Inadequate Monetary Award*

Finally, Laverne asserts that the trial court made an inadequate monetary award to her. The reconsideration of the business valuation may require an adjustment in the total monetary award. We also note that Harold did not raise any cross-errors with respect to the division of the property; therefore, we remand on the issue of the

---

**4.** We observe that, although neither party objected and neither party mentioned it on appeal, the trial court engaged in questioning of Charles which could indicate how the court arrived at its valuation:

Q: Mr. Charles, while they think of their next question, let me take care of some of mine; it might negate the necessity for other questions. I know that you weighted the average expenses for the shop, is that correct, sir?
A: Yes, sir.
Q: The rental income that is utilized, is that a 1988 rental income or is that—

   \*   \*   \*   \*   \*   \*

[the court proceeded to examine Charles with a series of questions addressing how Charles arrived at his figures]

   \*   \*   \*   \*   \*   \*

Q: Now the reason you chose five times as a multiple was because you wanted to find some-

thing which would have a return on the investment of 20 percent?
A: No, sir. Actually on the expenses, all that I—are you talking about the multiple of five—
Q: Income capitalization multiple—
A: Right, that is right. That represents the 20 percent.
Q: *The reason I'm asking some of these questions is because I was involved in a similar litigation on Friday where I had a C.P.A. tell me that, in a proprietary interest where there was one key person or there was a short lease or no lease, it was very difficult to evaluate these types of businesses. Can you share with me your thoughts on that?*
A: Well, it's not an exact science, I guarantee you that. (R. 70–73)

We trust the court did not rely on the expert witness testimony in the other case because the parties here had no opportunity to cross-examine and impeach the expert.

valuation of the business, and for an adjustment in the award based on the business value, and affirm the trial court in all other respects.

CHEZEM and CONOVER, JJ., concurring in part and dissenting in part.

CHEZEM, Judge, concurring in part and dissenting in part.

I concur as to Issue II and III however, I respectfully dissent as to Issue I. Because Laverne is disabled and without means of support, I would agree with her assertion that the trial court committed reversible error by not awarding her spousal maintenance. Indiana Code 31–1–11.5–11(e)(1) [1] gives the court the discretionary power to grant maintenance when the spouse is disabled. The circumstances in this case lead to the conclusion that some amount of maintenance should be provided to Laverne. Because of the large difference in their income and Laverne's inability to maintain any type of gainful employment due to her disability, I disagree with the majority and would find that it was an abuse of discretion for the trial court not to grant spousal maintenance. Although the *Dahnke* case cited by Laverne, *Dahnke v. Dahnke* (1989), Ind.App., 535 N.E.2d 172, discusses rehabilitative maintenance and not incapacitative maintenance, I agree with its general proposition that the trial court's denial of spousal maintenance can be an abuse of discretion when the denial is against the logic and facts of the circumstances of the case. Should Harold become disabled himself, he has an opportunity to petition the court for modification of the spousal maintenance award according to his circumstances.

As to Issue IV, I concur in that the reconsideration of the business valuation under Issue III may require an adjustment in the total monetary award, but would instruct the trial court to adjust the figure to include an appropriate spousal maintenance award as well.

CONOVER, Judge, concurring in part and dissenting in part.

I respectfully dissent as to Issue III. When valuing property in a dissolution of marriage proceeding, the trial court has broad discretion. *Neffle v. Neffle* (1985), Ind.App., 483 N.E.2d 767, 770, *reh. denied, trans. denied.* We do not reweigh the evidence on appeal in such cases. Our only task is to determine if there is sufficient evidence to support the determination reached by the trial court. Here, it heard testimony from Mr. Charles, Laverne's expert witness, valuing Harold's business at $30,470.00. However, Laverne also presented an exhibit showing the estimated value of the business equipment to be $2,000. (R. 82). Further, the property had been leased to Harold by the I.U. Foundation with no right to renew it. (R. 175–176). After the presentation of all the evidence, the trial court determined the value of the business was $2,000, an amount within the range established by the evidence. Thus, the trial court's determination is not clearly against the logic and effect of the facts and circumstances before the court. *Porter v. Porter* (1988), Ind.App., 526 N.E.2d 219, 226, *reh. denied, trans. denied.*

In *Porter*, the trial court included good will in its valuation of Dr. Porter's medical practice. On appeal, the first district of this court concluded the good will value of the medical practice could be included in the marital estate, but did not hold good will must be included. I find no abuse of discretion and would uphold the trial court's $2,000 valuation of Harold's business.

In all other respects, I concur with the majority.

---

**1.** I.C. 31–1–11.5–11(e)(1): ... if the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself is materially affected, the court *may* find that the maintenance for that support is necessary during the period of incapacity, subject to further order of the court.