**Pamela Rose DAHNKE, Appellant (Petitioner Below),**

v.

**Stephen J. DAHNKE, Appellee (Respondent Below).**

No. 12A04–9005–CV–239.

Court of Appeals of Indiana, Fourth District.

May 22, 1991.

Jack R. O'Bryan, Lafayette, for appellant.

Louis Pearlman, Jr., Pearlman & Chosnek, Lafayette, for appellee.

CHEZEM, Judge.

### Case Summary

Petitioner–Appellant, Pamela R. Dahnke (Pam), appeals from the trial court's denial of rehabilitative maintenance and appellate attorney fees, along with its refusal to order the continuation of life insurance which could benefit the children, in her divorce action against Respondent–Appellee, Stephen J. Dahnke (Steve). We reverse and remand.

### Issues

Pam presents three (3) issues for our review, which we restate as follows:

I. Whether the trial court abused its discretion in denying rehabilitative maintenance to Pam.

II. Whether the trial court abused its discretion in refusing to order Steve to continue his life insurance (which would benefit his children in the event of his death).

III. Whether the trial court erred in determining that it did not have jurisdiction to award appellate attorney fees to Pam.

### Facts and Procedural History

This is the second appeal of this case to this Court. In our prior decision, we set forth the facts of the case, as follows:

Pam became pregnant by Steve in December, 1971. She then dropped out of high school, missing her last semester. However, she walked through graduation exercises with her class in May, 1972, because she had accumulated enough credits to receive her high school diploma before she dropped out.

She and Steve were married in February, 1972. Pam wanted to go to college, but could not because she was pregnant. The couple's first child, Jason Shane, was born September 9, 1972. Their next child, Tamara Michelle, was born November 5, 1975, and their last child, Nathan J., was born July 8, 1984.

During the marriage Pam worked for six months as a receptionist earning a minimum wage. Pam left that job due to the expense connected with her employment and because Steve felt it would be best if she stayed home with Jason. Later, Pam again tried working, this time as a cashier. She left this job after 1½ years, however, again to stay home with the children. Nevertheless, she continued supplementing the family's income by babysitting at home. Also, she helped with various duties on the farm such as bailing hay, and milking, feeding, castrating and vaccinating the animals. Before their third child was born Pam again expressed an interest in attending college. However, she could not because she had sole responsibility for all homemaking duties and raising the children.

Steve worked on his father's farm and in his father's construction business. His annual salary totaled approximately $18,000 per year. A $50,000 life insurance policy on his life was purchased. Steve's father provided the family with housing, beef, firewood, milk, eggs, land, farm buildings, income from the sale of animals and from renting and farming

land. Pam filed this action after discovering Steve was having an adulterous relationship after more than 14 years of marriage. The couple separated September 27, 1986.

In December, 1986, Pam took the Scholastic Aptitude Test (S.A.T.), and the Strong Campbell Test. The latter indicated she had an interest in and aptitude for the medical field. Thereafter, she started taking general education courses at Purdue University. Alan Dye, an expert in counseling, testified Pam's academic record and S.A.T. score qualified her for admission to Purdue's nursing school.

The trial court denied Pam's request for rehabilitative maintenance, and failed to discuss Steve's life insurance policy in its special findings of fact. It denied Pam's motion to correct errors which asked the court to consider for the first time evidence concerning the agreed judgment which had been entered in a collection case against Steve and Pam without Pam's knowledge or consent. The trial court awarded Pam custody of the children, $416.00 per month in child support, one-half of the proceeds (approximately $2,500) from the sale of livestock, a 1977 Chevrolet Impala worth $500, and a three wheeled vehicle. It awarded Steve a 1980 Chevrolet truck, miscellaneous farm equipment valued at $11,175, a snowmobile, a freezer, and hay and feed. He was ordered to pay Pam's attorney fees for this action and the debts of the marriage.

*Dahnke v. Dahnke* (1989), Ind.App., 535 N.E.2d 172, 173–174, *reh. denied.*

The two issues which we addressed in the prior appeal were: (1) whether the trial court erred by failing to find Pam's education was interrupted; and (2) whether the trial court erred by failing to make special findings of fact concerning Steve's life insurance policy. *Id.* We reversed and remanded the case, as follows:

Reversed and remanded with instructions to:

(a) enter findings of fact consistent with this opinion regarding interruption of Pam's education;

(b) reconsider awarding Pam rehabilitative maintenance in light of its new findings and the provisions of I.C. 31–1–11.5–11;

(c) enter findings of fact consistent with this opinion regarding Steve's life insurance policy; and

(d) modify the judgment entered below accordingly.

*Dahnke,* 535 N.E.2d at 176.

After the case was remanded, Pam filed her Petition for [Appellate] Attorney Fees on August 2, 1989. The trial court then scheduled an evidentiary hearing to address the Petition. Shortly after that hearing, the court issued its Order Amending Findings of Fact, Conclusions and Decree of Dissolution on January 25, 1990. The court denied Pam's requests for rehabilitative maintenance and appellate attorney fees, and also refused to order Steve to continue his life insurance.

### Discussion and Decision

#### I

Pam first argues that "[t]he trial court erroneously found under I.C. 31–1–11.5–11(e)(3) that [she] was not entitled to rehabilitative maintenance [from Steve]." In particular, she claims the trial court ignored certain statutory factors which must be considered in determining whether to award such maintenance. We agree.

The factors to be considered by a trial court are set forth in I.C. 31–1–11.5–11(e)(3), as follows:

(3) After considering:

(A) the educational level of each spouse at the time of marriage and at the time the action is commenced;

(B) whether an interruption in the education, training, or employment of a spouse who is seeking maintenance occurred during the marriage as a result of homemaking or child care responsibilities, or both;

(C) the earning capacity of each spouse, including educational background, training, employment skills,

work experience, and length of presence in or absence from the job market; and

(D) the time and expense necessary to acquire sufficient education or training to enable the spouse who is seeking maintenance to find appropriate employment;

a court may find that rehabilitative maintenance for the spouse seeking maintenance is necessary in an amount and for a period of time that the court considers appropriate, but not to exceed three (3) years from the date of the final decree.

■ This statute is written in the conjunctive, and the trial court should consider *each* of the factors in determining whether an award of rehabilitative maintenance is warranted. Moreover, while the trial court has broad discretion in making its determination, an abuse of discretion will be found when the trial court misinterprets the law or disregards evidence of factors listed in the controlling statute. *Dahnke*, 535 N.E.2d at 174–175; *Axsom v. Axsom* (1991), Ind.App., 565 N.E.2d 1097.

■ The record in this case shows that the trial court did not adequately consider the fourth factor set forth by the statute. In its findings, the trial court states in pertinent part:

> In considering ". . . the time and expense necessary to acquire sufficient education or training to enable the spouse who is seeking maintenance to find appropriate employment," the Court is hard pressed to determine what is "appropriate" but is cognizant of the distinction between "appropriate," "more appropriate" and "most appropriate."

The trial court wholly failed to mention or discuss the evidence presented at the hearing with respect to the time and expense it would take for Pam to acquire the education needed to secure appropriate employment. There was an abundance of testimony on this matter which has been ignored or disregarded by the trial court in its findings. We are not holding that rehabilitative maintenance should have been awarded in this case, but only that the trial court abused its discretion by disregarding

evidence of the fourth factor set forth in I.C. 31–1–11.5–11(e)(3).

## II

Pam next argues that "[t]he trial court erroneously decided that [Steve] did not have to retain two (2) present $50,000 life insurance policies on his life with the children as sole beneficiaries." We disagree.

■ The trial court has broad discretion in determining how minor children will be provided for by divorcing parents. *Allen v. Allen* (1985), Ind.App., 477 N.E.2d 104, 107. We will disturb the court's determination in this respect only where an abuse of discretion is clearly shown, *i.e.* when the determination is clearly against the logic and effect of the facts and circumstances before the court, including any reasonable inferences that might be drawn therefrom. *Porter v. Porter* (1988), Ind. App., 526 N.E.2d 219, 227, *reh. denied, trans. denied.*

In the present case, the pertinent findings made by the trial court with respect to the life insurance policies are as follows:

> 31. That [Steve] had a fifty thousand dollar whole life insurance policy with no cash value.
> 32. That [Steve] had a fifty thousand dollar term life insurance policy, which, of course, had no cash value.
> 33. That the insurance policies are not assets to be divided because they have no value.
> 34. That there is no compelling reason to require [Steve] to either maintain insurance or to make his children of this marriage the sole beneficiaries of any policies.

■ We first note that a trial court may order the continuation of a life insurance policy which would benefit the children even though it has no cash value. *Hunter v. Hunter* (1986), Ind.App., 498 N.E.2d 1278, 1291. Nevertheless, the trial court did not abuse its discretion in denying such an order in this case. We note that Steve has an annual salary of only $18,000 per year, and he receives housing from his father. In addition, he pays $416 per

month in child support, along with all of the children's medical, dental, optical and prescription expenses. Steve also maintains medical insurance on the children, and pays one-half of their school expenses.[1] Under these particular facts and circumstances, we hold the trial court did not err in refusing to order Steve to continue his life insurance.

### III

The last argument has to do with appellate attorney fees. Pam argues that "[t]he trial court erroneously decided that it did not have jurisdiction to award appellate attorney fees [to Pam]." We agree.

Pam filed her Petition for [Appellate] Attorney Fees approximately five months *after* our decision in the prior appeal. At the time, the trial court had not yet addressed the matters which we had remanded with instructions. The court held an evidentiary hearing, and then denied the attorney fees because it determined that it was "without jurisdiction." As the trial court stated in its Order:

> IT IS FURTHER ORDERED AND ADJUDGED that this Court is without jurisdiction to award appellate attorney fees and that the Petition for Attorney Fees of Pamela Rose Dahnke is DE-NIED.

■ We disagree with the trial court. The law is well-settled that a trial court may award attorney fees at any stage of a dissolution proceeding, including appellate fees. *Sovern v. Sovern* (1989), Ind.App., 535 N.E.2d 563, 567, *reh. denied.* The pertinent statute is I.C. 31–1–11.5–16(a), which states as follows:

> The court from time to time may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorneys' fees, including sums for legal services rendered and

costs incurred prior to the commencement of the proceedings or after the entry of judgment. The court may order the amount to be paid directly to the attorney, who may enforce the order in his name.

■ The record in this case shows that the trial court had the necessary jurisdiction at the time it denied the Petition. We note the court had not yet addressed the matters which we had remanded with instructions. In other words, the appellate attorney fees had been incurred *during* the dissolution proceedings. Indeed, the statute in question even provides that attorney fees may be awarded "after the entry of judgment."[2] The trial court erred with respect to Issue III.

Therefore, we reverse and remand this case with instructions for the trial court to:

(1) enter findings of fact with respect to the fourth factor set forth in I.C. 31–1–11.5–11(e)(3);

(2) reconsider awarding rehabilitative maintenance in light of the new findings;

(3) address and decide the merits of the Petition for [Appellate] Attorney Fees; and

(4) modify the judgment entered below accordingly.

CONOVER, J., concurs in result with separate unpublished opinion.

SULLIVAN, J., concurs in part/dissents in part with separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

While I agree that the trial court should reconsider the matter of rehabilitative maintenance and enter amended findings and conclusions, I do not agree that the order appealed is disrespectful or contemptuous of this court's prior decision. In my

---

1. At the evidentiary hearing on appellate attorney fees, Steve testified that he filed for bankruptcy shortly after the final decree, and was then discharged of debts.

2. We also note the case law which states that trial courts retain jurisdiction to award appellate attorney fees even while an appeal is pending before this Court. *E.g., Scheetz v. Scheetz* (1987), Ind.App., 509 N.E.2d 840, 848–849, *reh. denied* 522 N.E.2d 919 (1988); *Wagner v. Wagner* (1986), Ind.App., 491 N.E.2d 549, 554–555.

view, the trial judge was merely stating, at least in part and albeit erroneously, that only the education which is interrupted is the proper subject of rehabilitative maintenance.

Furthermore, I do not believe that the trial court "ignored or disregarded" the evidence concerning the education necessary for "appropriate employment". I construe his order to evidence an understandable degree of difficulty in determining what is or is not "appropriate" employment and what is or is not a "sufficient" education for that appropriate employment. Although the court may have inadvertently or erroneously confused appropriate employment with appropriate education, and may have thought an interruption of education was essential to an award of maintenance, the message, I think is clear. To me, the trial court was stating that, in this case, employment as a nurse was not so "appropriate" as to require Stephen Dahnke to pay for two years of nursing school. If I am correct in this regard, and if the trial court enters proper findings and conclusions or a clear-cut statement of reasons for denying maintenance, it may be necessary that we affirm that decision as an appropriate exercise of discretion. Under Issue II, we straightforwardly and properly affirm the trial court's determination with respect to retention of the two life insurance policies on the grounds that we may reverse "only where an abuse of discretion is clearly shown, i.e., when the determination is clearly against the logic and effect of the facts and circumstances...." at 1281. Given appropriate findings and conclusions it would appear necessary to afford the same deference to an exercise of discretion as to rehabilitative maintenance.

In this connection, I do not read this court's earlier decision in *Dahnke v. Dahnke* (1989) 4th Dist. Ind.App., 535 N.E.2d 172, to mandate an award of maintenance. Judge Shields' separate opinion in that case correctly observed that the trial judge was focusing upon the wrong question. An interruption in education, if it occurred, is only one factor in the determination. Even assuming that the majority in the earlier case was correct in stating that Pamela's high school education was interrupted, such fact does not necessarily mandate an award of maintenance to pay for a higher level of academic achievement as essential to appropriate employment.

It is incumbent upon the trial court to demonstrate that he carefully considered the four factors set forth in the statute and to grant or deny an award accordingly. However, in light of the fact that Pamela Dahnke did not take the SAT test or make application to any school of higher learning during her last year in high school, the observation made by Judge Shields that her "intent was speculative at best" seems a valid consideration.

I must dissent from the holding under Issue III. A trial court is not empowered to award appellate attorney fees "at any stage" of the proceedings. *Hudson v. Hudson* (1985) 2d Dist. Ind.App., 484 N.E.2d 579; *Scheetz v. Scheetz* (1987) 2d Dist., Ind.App., 509 N.E.2d 840, 850 (Sullivan J., concurring in part and dissenting in part).