**Larry Allen BLAZEK, Appellant–Respondent,**

v.

**Mary Jo BLAZEK, Appellee–Petitioner.**

No. 49A04–9308–CV–280.

Court of Appeals of Indiana, Fourth District.

March 29, 1994.

Paul J. Page, Baker, Siegel & Page, Indianapolis, for appellant.

Russell T. Clarke, Jr., Emswiller, Williams, Noland & Clarke, Indianapolis, for appellee.

RILEY, Judge.

## STATEMENT OF THE CASE

This is an appeal from a decree of dissolution that ordered the Respondent–Appellant Larry Allen Blazek (Larry) to pay $700 per month to the Petitioner–Appellee Mary Jo Blazek (Mary Jo) as rehabilitative maintenance for a period of three years.

We affirm.

## ISSUE

Whether the trial court erred in its interpretation of IND.CODE 31–1–11.5–11(e)(3) by awarding wife rehabilitative maintenance.

## FACTS

Larry and Mary Jo Blazek were married on June 12, 1960. This marriage followed a four year engagement beginning in 1956 when Mary Jo graduated from high school. During that four year period, Mary Jo worked and attended night school where she had taken a typing and shorthand class. Larry attended college and received a Bachelor of Science Degree from Concordia Lutheran College. During the marriage the couple had four children. After starting their family, Mary Jo was primarily a full-time homemaker and mother, although she supplemented the family income by working part-time as a receptionist in a doctor's office. The four children are now all emancipated with the youngest child moving out the year before the dissolution was granted. Mary Jo has subsequently worked full-time as a receptionist in a doctor's office for twelve years and earns approximately $18,900 a year.

During the marriage Larry obtained a master's degree and also has done work toward his doctorate degree. Larry has been employed as a science teacher for the last thirty-three years, and his earnings are approximately $53,000 a year, as a teacher and coach.

The decree granting the dissolution of marriage was entered on April 13, 1993, and the findings of fact held that because there is a disparity in the earnings and earning potential of the parties, an equal division of the marital estate would not be reasonable. Mary Jo received assets valued at $45,918.18, while Larry received assets valued at $36,-305.57. Larry was also responsible for approximately $7,300 in marital debt. In addition, Larry was ordered to pay the sum of $700 per month as rehabilitative maintenance for a period of three years beginning May 1, 1993.

### STANDARDS OF REVIEW

■ Trial courts are vested with broad discretion in the area of denying or granting rehabilitative maintenance. An abuse of discretion occurs only if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions which may be drawn from the facts and circumstances. *Dahnke v. Dahnke* (1989), Ind.App., 535 N.E.2d 172, 174, *reh'g denied.* Discretion is a privilege afforded a trial court to act in accord with what is fair and equitable in each case. *In re Marriage of Dillman* (1985), Ind.App., 478 N.E.2d 86, 87. We will reverse only for abuse of that discretion.

■ In the case before us, there was no request for special findings. The court did enter findings with the judgment sua sponte. When a trial court makes specific findings on its own motion, the general judgment will control as to the issues upon which the court has not found and the specific findings control only as to the issues they cover. *In re Marriage of Snemis* (1991), Ind.App., 575 N.E.2d 650, 652 (citing *United Farm Bureau Mut. Ins. Co. v. Blanton* (1983), Ind.App., 457 N.E.2d 609). We may not reverse the trial court's findings in such circumstances unless they are clearly erroneous. Ind.Trial Rule 52(A).

### DISCUSSION AND DECISION

The facts reveal that the parties were married for over thirty-two years. Larry worked as a teacher and coach while Mary Jo stayed home with the children, worked part-time as a receptionist and took care of the household. Larry did not encourage her to work and, in fact, did not "agree" that Mary Jo should be employed. (R. 111). Larry also was able to further his education during the marriage by obtaining his master's degree and hours toward his doctorate degree. Mary Jo has achieved her highest level of employment with her limited skills and work experience.

■ Our legislature intended an educationally-impaired spouse should be made as whole as possible within I.C. 31–1–11.5–11 [1] because "as to the individual, justice and equity require no less." *Dahnke*, 535 N.E.2d

1. I.C. 31–1–11.5–11 provides, in part:
   (e) A court may make the following findings concerning maintenance:
   (1) If the court finds a spouse to be physically or mentally incapacitated to the extent that the ability of the incapacitated spouse to support himself is materially affected, the court may find that maintenance for that spouse is necessary during the period of incapacity, subject to further order of the court.
   (2) If the court finds a spouse lacks sufficient property, including marital property apportioned to that spouse, to provide for that spouse's needs and that spouse is the custodian of a child whose physical or mental incapacity requires the custodian to forego employment, the court may find that maintenance is necessary for that spouse in an amount and for a period of time as the court deems appropriate.

   (3) After considering:
   (A) the educational level of each spouse at the time of the marriage and at the time the action is commenced;
   (B) whether an interruption in the education, training, or employment of a spouse who is seeking maintenance occurred during the marriage as a result of homemaking or child care responsibilities, or both;
   (C) the earning capacity of each spouse, including educational background, training, employment skills, work experience, and length of presence in or absence from the job market; and
   (D) the time and expense necessary to acquire sufficient education or training to enable the spouse who is seeking maintenance to find appropriate employment; a court may find rehabilitative maintenance for the spouse seek-

at 175. In sum, justice is served when that statute is applied and enforced by trial courts in appropriate cases. *Id.*

 At issue here is the trial court's interpretation of I.C. 31–1–11.5–11(e)(3), where the court stated in its Findings of Fact and Decree of Dissolution as follows:

16. That there is a disparity in the earnings and earning ability of the parties and the husband shall pay to the wife the sum of $700 per month as rehabilitated [sic] maintenance for three years beginning May 1, 1993.

Larry argues that the trial court abused its discretion by misinterpreting "earning capacity" in I.C. 31–1–11.5–11(e)(3)(C). He argues that "earning capacity" as used in the statute and "disparity of earnings" as used in the Findings of Fact and Dissolution Decree, are separate and distinct factual conclusions under Indiana law. We disagree.

In the findings, the trial court talks about disparity in the earnings and earning ability of the parties which is based upon the language of the statute. This language is sufficient to support the trial court's award of rehabilitative maintenance because the statute does not say that the trial court must look only to one factor, but it requires the trial court to look at each of the four enumerated factors. I.C. 31–1–11.5–11(e)(3) is written in the conjunctive. Therefore, no one factor precludes or requires the exercise of the trial court's discretion in a predetermined manner. Judge Shields, in a separate opinion, in *Dahnke*, 535 N.E.2d at 177, found that the interruption of the wife's education was within the function of the trial court to weigh the evidence and judge the credibility of the witnesses and that this court will not disturb that finding.

It is clear that the trial court did not abuse its discretion by considering the educational background, training, employment skills, work experience, and length of presence or absence in the job market of the parties as well as the other factors provided by law. The facts reveal that Mary Jo had an interruption in her training or employment during her marriage as a result of her homemaking and child care responsibilities, limited skills and education, and lower earning capacity. The record is silent as to Mary Jo's educational opportunities in 1960 before her children were born and the couple's financial ability to send her to college. When a spouse gives up his or her educational pursuits to assume the homemaking and child rearing responsibilities incident to marriage but the marriage either in the near or far term fails, it is unjust and inequitable to leave the educationally-impaired spouse without an opportunity to achieve the job market skills he or she could have reached but for the interruption of such spouse's education. *Dahnke*, 535 N.E.2d at 175. There is evidence of all of these statutory factors and the judgment is within the logic of the facts and circumstances before the trial court. We will not substitute our judgment for the trial court.

Rhetorical paragraph 16 of the Findings of Fact and Dissolution Decree states that the trial court had considered the earnings and earning ability of the parties to support its award of rehabilitative maintenance. There is no evidence to show that the trial court refused to hear evidence of other statutory factors. Because the parties did not request specific findings of fact pursuant to T.R. 52(A), this court will set aside the judgment of the trial court only if the record is devoid of facts or inferences supporting the finding. Here, the record is replete with factors a court may consider concerning rehabilitative maintenance and we will not set aside the judgment. The other statutory factors are viewed as a part of the general judgment of which there is evidence to support the trial court's finding.

## CONCLUSION

We hold that the trial court did not err when it entered its award of rehabilitative maintenance.

Affirmed.

CHEZEM and BAKER, JJ., concur.

ing maintenance is necessary in an amount and for a period of time that the court considers appropriate, but not to exceed three (3) years from the date of the final decree.