**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**BRYAN LEE CIYOU**
**LORI B. SCHMELTZER**
Ciyou & Dixon, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE:

**DANIEL J. MOORE**
Laszynski & Moore
Lafayette, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE: THE MARRIAGE OF, | ) | |
| | ) | |
| MIKIKO HIGE, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 79A02-1303-DR-274 |
| | ) | |
| CHRISTOPHER L. GLICK, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE TIPPECANOE SUPERIOR COURT
The Honorable Randy J. Williams, Judge
Cause No. 79D01-1107-DR-135

**January 31, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Mikiko Hige appeals the trial court's dissolution of her marriage to Christopher Glick. We affirm.

**Issues**

Hige raises three issues, which we restate as:

I.      whether the trial court abused its discretion in denying her motions to continue the final hearing;

II.     whether the trial court abused its discretion in denying her request for rehabilitative maintenance; and

III.    whether the trial court abused its discretion in dividing the marital estate.

**Facts**

Hige and Glick met at Indiana University, where Hige was earning a master's degree in foreign language education. They married in 1994. The couple thereafter lived in Japan, where Glick, who has a bachelor's degree in geography and a master's degree in linguistics, worked as a tenured professor teaching English. Hige did not work during the marriage. The couple did not have any children.

The couple separated in 2010, and Glick moved back to the United States, where he worked odd jobs until he enrolled in college to earn a degree in chemical engineering. Hige eventually returned to the United States and enrolled in classes to earn a master's degree in library science. Hige was enrolled part-time because she was suffering from mental health issues. Both parties were living from assets accrued during the marriage.

Although Glick initially filed for divorce in Japan, he decided to file for dissolution in Indiana upon learning that the proceedings would take four to seven years in Japan and that he would have to pay $3,500 a month in spousal support while the matter was pending. Glick petitioned for dissolution in Indiana in July 2011. In January and April 2012, Hige requested and was granted continuances of the final hearing. In August 2012, Hige changed attorneys and moved for a continuance, which was granted. On August 24, 2012, the trial court issued an order dissolving the marriage and leaving the distribution of marital property unresolved. On September 21, 2012, Hige filed another motion to continue the final hearing, which the trial court denied. On September 24, 2012, an evidentiary hearing was conducted. The hearing was not completed and was rescheduled for November 8, 2012. On October 19, 2012, Hige moved to continue the hearing, and it was rescheduled for December 10, 2012. On December 5, 2012, Hige filed another motion to continue, which the trial court denied.

On December 10, 2012, the evidentiary hearing was concluded. On February 25, 2013, the trial court issued an order rejecting Hige's request for rehabilitative maintenance and awarding her approximately 52% of the marital estate. She now appeals.

**Analysis**

The trial court entered its findings and conclusions sua sponte. Under the circumstances, special findings entered by the trial court sua sponte control only as to the issues they cover. Harrison v. Thomas, 761 N.E.2d 816, 819 (Ind. 2002). "As to issues on which the trial court has not made findings, or on which the findings are inadequate,

3

we treat the judgment as a general one and we examine the record and affirm the judgment if it can be sustained upon any legal theory the evidence supports." Id. As to the findings the trial court did make, we first must determine whether the evidence supports the findings and then whether those findings support the trial court's conclusions. Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind. 1997). Findings will only be set aside if they are clearly erroneous, which occurs only when the record contains no facts to support them either directly or by inference or if the trial court applies the wrong legal standard to properly found facts. Id. "In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made." Id.

We neither reweigh the evidence nor reassess witness credibility, and we view the evidence most favorably to the judgment. Best v. Best, 941 N.E.2d 499, 502 (Ind. 2011). "Appellate deference to the determinations of our trial court judges, especially in domestic relations matters, is warranted because of their unique, direct interactions with the parties face-to-face, often over an extended period of time." Id.

### I. Continuances

Hige argues that the trial court abused its discretion by denying her September 21, 2012 and December 5, 2012 motions to continue. Pursuant to Indiana Trial Rule 53.5, "trial may be postponed or continued in the discretion of the court, and shall be allowed upon a showing of good cause established by affidavit or other evidence." "A trial court's decision to grant or deny a motion to continue a trial date is reviewed for an abuse of discretion, and there is a strong presumption the trial court properly exercised its

4

discretion." Gunashekar v. Grose, 915 N.E.2d 953, 955 (Ind. 2009). "A denial of a motion for continuance is abuse of discretion only if the movant demonstrates good cause for granting it." Id. "However, no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial . . . ." Troyer v. Troyer, 867 N.E.2d 216, 219 (Ind. Ct. App. 2007).

## A. September 21, 2012 Motion

In her September 21, 2012 motion, Hige argued that Glick had not provided information she requested about bank accounts, recent employment, and savings bonds and suggested that it would be necessary to obtain the information from third parties. After a telephone conference,[1] the trial court denied Hige's motion. At the beginning of the September 24, 2012 hearing, the trial court explained that, as discussed at the telephone conference, they would get through what they could that day and, if more information was needed, they would deal with it at the close of the evidence and the matter could be reset.

We cannot conclude that Hige was prejudiced by the denial of this request for a continuance. First, Hige previously had been granted three continuances. Further, at the hearing, Glick was questioned regarding the evidence that he had purportedly failed to disclose, allowing Hige to determine what, if any additional information was needed. Moreover, the hearing was not concluded that day and was reset for November 8, 2012, and then, upon Hige's request, continued to December 10, 2012. Thus, Hige was given

---

[1] Glick argues that Hige's failure to provide us with a transcript of the telephone conference waives this issue. Because of the trial court's summary of the telephone conference at the September 24, 2012 hearing, which was transcribed, we are able to adequately review this issue.

5

the opportunity to question Glick about the information that she requested and to follow up with discovery requests following the hearing, which she did. Under these circumstances we cannot say that Hige was prejudiced by the denial of the September 21, 2012 motion to continue, and she has not established that the trial court abused its discretion in denying the motion.

## B. December 5, 2012 Motion

On December 5, 2012, Hige filed another motion to continue in which she asserted that her mental condition rendered her unable to properly prepare for and attend the December 10, 2012 hearing.[2] Glick objected to a continuance, and the trial court denied the request.

Again, Hige has not established that the trial court abused its discretion in denying the motion. At the September 24, 2012, hearing, Hige testified regarding her depression and anxiety and the resulting difficulty focusing and remembering to do things. She testified that the problem was ongoing. Hige, however, was able to testify about her various assets and plans for employment. The trial court, therefore, was able to gauge Hige's ability to participate in the proceedings when it ruled on the December 5, 2012 motion to continue.[3] It was within the trial court's discretion to deny the motion, and Hige has not established an abuse of that discretion.

## II. Rehabilitative Maintenance

[2] On appeal, Hige argues that her mental health problems coupled with an ongoing discovery dispute, which purportedly continued at least through October 30, 2012, warranted the continuance. However, because the December 5, 2012 motion to continue was based solely on Hige's mental state and not discovery issues, we decline to consider the purported ongoing discovery dispute as a basis for granting this continuance.

[3] Hige did not assert that her mental state had worsened since the September 24, 2012 hearing.

Hige argues that the trial court erred in denying her request for rehabilitative maintenance. "Trial courts are vested with broad discretion in the area of denying or granting rehabilitative maintenance." Blazek v. Blazek, 631 N.E.2d 518, 520 (Ind. Ct. App. 1994). "An abuse of discretion occurs only if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions which may be drawn from the facts and circumstances." Id.

Rehabilitative maintenance may be awarded pursuant to Indiana Code 31-15-7-2, which provides:

> A court may make the following findings concerning maintenance:
>
> * * * * *
>
> (3) After considering:
>
>> (A) the educational level of each spouse at the time of marriage and at the time the action is commenced;
>>
>> (B) whether an interruption in the education, training, or employment of a spouse who is seeking maintenance occurred during the marriage as a result of homemaking or child care responsibilities, or both;
>>
>> (C) the earning capacity of each spouse, including educational background, training, employment skills, work experience, and length of presence in or absence from the job market; and
>>
>> (D) the time and expense necessary to acquire sufficient education or training to enable the spouse who is seeking maintenance to find appropriate employment;

7

> a court may find that rehabilitative maintenance for the spouse seeking maintenance is necessary in an amount and for a period of time that the court considers appropriate, but not to exceed three (3) years from the date of the final decree.

Hige contends that "this Court has held time and time again that the statute should not be ignored in the face of uncontroverted evidence of one or more of the statutory factors that are before the court, as justice and equity <u>require</u> application and enforcement." Appellant's Reply Br. p. 13. We disagree that our previous discussions of the purpose and benefits of rehabilitative maintenance require an award of maintenance where one or more of the statutory factors is found by a trial court. The statute is clearly permissive, and we have repeatedly held that trial courts are vested with broad discretion in these matters. <u>See e.g.</u>, <u>Blazek</u>, 631 N.E.2d at 520; <u>Dahnke v. Dahnke</u>, 535 N.E.2d 172, 174 (Ind. Ct. App. 1989) ("Trial courts are vested with broad discretion in this area."), <u>trans. denied</u>.

### A. Findings of Fact

Hige asserts that several of the trial court's findings are not supported by the evidence. The trial court found in part:

> 8. The wife ultimately returned to the United States in December 2011 to attend Portland State University. On March 8, 2012, the wife obtained her student VISA[4] which requires that she be a full-time student with classes to be approved by ICE. . . . She has student loan of $11,800 which is paid through part-time work.
>
> 9. During the course of the marriage, the wife received gifts from her father on at least two (2) occasions of over

---

[4] The trial court was referring to Hige's ability to work legally in the United States.

> $100,000.00    The wife is eligible for Japanese National Pension although the amount is unclear.

App. pp. 7-8.

Hige argues that the trial court found that her VISA allowed her to work up to twenty hours per week and challenges her mental ability to attend school full-time and to work pursuant to the terms of the VISA. The trial court, however, did not specifically make any findings regarding Hige's ability to work twenty hours per week. Hige has not established that the finding is clearly erroneous.

Hige also argues that the finding regarding the $11,800 student loan is not supported by the record, and Glick agrees. There was evidence that when the couple married Glick had student loans, which have been paid off. There is no evidence that Hige has any outstanding student loans. However, we fail to see how the erroneous finding that Hige had student loans affected her substantial rights in the context of rehabilitative maintenance. Thus, we disregard this error as harmless. See Ind. Trial Rule 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.").

Hige also argues that Finding 9 suggests that she received two gifts of $100,000 each from her father and that the record does not contain evidence of such gifts. We agree with Glick that, at most, this finding is poorly worded and reflects the testimony that over the marriage Hige's father transferred money to her. In fact, Hige testified that her father gave her $100,000 while they were married. The evidence supports this finding.

9

Hige also argues that the evidence does not support the finding that she is eligible for the Japanese National Pension. Although the evidence regarding her eligibility is less than clear, there is some evidence to support the finding. Glick testified that he paid into the system on Hige's behalf and believed she met the requirements because of the contributions he made in her name. On this issue, Hige initially testified that she had the pension and later explained that she paid in "[a]lmost barely" the minimum amount of time to be eligible for the pension but didn't know if she qualified or not. Tr. p. 87. When asked if she paid into the system for the requisite time, Hige answered, "I believe maybe barely but I'm not sure." Id. at 90. The trial court was free to consider Glick's testimony and the portions of Hige's testimony in which she indicated she was eligible for the pension as credible. We are not convinced that the trial court's findings require us to reverse the denial of Hige's request for rehabilitative maintenance.

### B. Statutory Factors

Hige argues that the trial court disregarded evidence of the statutory factors and, after providing argument regarding each factor, asserts that her request for maintenance should have been granted. This is largely a request to reweigh the evidence, which we cannot do.

At the time of the marriage, both parties had master's degrees. Hige did not work during the marriage, and contrary to Hige's assertions, Glick described the manner in which she helped him translate and research as "[m]inimal." Tr. p. 50. There was also evidence that Hige tutored for a short time but hated it and decided she could not teach.

10

Glick testified that he encouraged her to teach English, but she did not want to. Thus, the record does not support Hige's claim that she gave up her career to support Glick's.

Hige also claims that Glick voluntarily reduced his income to avoid paying spousal support. It is true that after separating Glick voluntarily left his tenured teaching position in Japan and returned to the United States. However, Glick's education and employment history of teaching English were not as marketable in the United States as they were in Japan. After applying to several universities without success, Glick decided to take classes to earn a degree in engineering. The record does not support Hige's assertion that Glick clearly reduced his income to avoid paying maintenance.

Although Hige testified that her employment prospects in Japan and the United States were not promising and that her mental health issues prohibited her from taking classes full time or working, at the time of the hearing, both parties were living from assets acquired during the marriage while they attended school to earn additional degrees. Hige's request that we reverse is merely a request that we reweigh the evidence, which we cannot do. Hige has not established that the trial court abused its discretion by denying her request for rehabilitative maintenance.

### III. Marital Estate

Hige argues that the trial court erred by dividing the marital estate equally instead of awarding her 65% of the marital estate.[5]

> Property owned by either spouse before the marriage is included in the marital estate and subject to division and distribution. Ind. Code § 31-15-7-4 (1998). Indiana law

---

[5] Pursuant to the trial court's order, Hige effectively was awarded 52% of the marital estate.

requires that marital property be divided in a "just and reasonable manner," id., and provides for the statutory presumption that "an equal division of the ‑ marital property between the parties is just and reasonable." I.C. § 31-15-7-5. This presumption may be rebutted, however, by evidence of each spouse's contribution to the acquisition of the property, the extent to which the property was acquired before the marriage or by inheritance, the economic circumstances of each spouse, the conduct of the parties relating to the disposition or dissipation of assets, and each spouse's earning ability. Id.

Fobar v. Vonderahe, 771 N.E.2d 57, 58-59 (Ind. 2002). Because this case turns on whether the trial court's division of the marital property was just and reasonable, it is highly fact sensitive and is subject to an abuse of discretion standard. See id. at 59. We do not weigh evidence and consider it in a light most favorable to the judgment. Id.

Hige argues that the trial court erred when it found, "The division of property and assignment of liabilities entered herein is as [sic] equal, just, reasonable, fair and equitable award thereof under the facts presented at trial including the parties' agreement of the same." App. p. 12. Hige contends that this finding erroneously suggests the parties reached a settlement agreement. Instead, we believe the trial court was simply referring to the parties' agreement on certain facts, including, for example, the value of some of the marital assets.

Hige also argues she presented substantial evidence to rebut the presumption that an equal division of the marital estate was proper. We disagree. First, the evidence showed that Glick worked as a professor throughout the marriage. Although Hige claims she supported his career by helping with research and translations, Glick described her contributions as "[m]inimal." Tr. p. 50. Second, regarding the gifts from Hige's father,

12

Hige concedes that there is no evidence regarding whether those funds were spent during the marriage or retained by her upon separation. Without more, she has not shown that she was entitled to a set-off for the gifts.

Third, Hige argues that she has no ability to earn income and that Glick voluntarily left his career and could return anytime. However, there is no evidence that Glick could return to the same position in Japan and there was extensive evidence regarding his unsuccessful efforts to find a comparable teaching job in the United States.

Fourth, Hige contends a reasonable inference could be drawn that Glick failed to disclose marital assets that should have been divided. This argument is speculative at best. The proceeding was riddled with discovery disputes and allegations of undisclosed assets by both parties. Glick was questioned thoroughly at the September 24, 2012 hearing regarding his disclosure of marital assets including various transfers between accounts during the marriage and the location and amounts of savings bonds that he had purchased during the marriage. The trial court was in the best position to assess Glick's credibility on this issue. Without more, Hige has not established Glick improperly failed to disclose assets.

Fifth, Hige claims there was no evidence that Glick could not return to his former career and earn the equivalent of what he had previously earned and contends that she never had a job in the United States and is not employable in Japan "due to her age, lack of work experience, and the Japanese culture." Appellant's Br. p. 42. However, the evidence showed that Glick could not find comparable work in the United States and the trial court was free to discredit Hige's testimony about her inability to find work,

13

especially in light of the evidence that she had not actually applied for any jobs. Further, although Hige contends that she "relinquished her career pursuits" to support Glick, there is evidence Glick encouraged Hige to teach but she did not want to. Id. Hige also argues that she, at fifty-six years old, is much closer to retirement than forty-three-year-old Glick and has less time to prepare for retirement. Although that may be the case, there is evidence that Glick contributed toward Hige's Japanese pension throughout the marriage and that, as Glick understood it, Hige stands to inherit "a very large sum" from her father. Tr. p. 156.

The evidence showed that, although both parties had advanced degrees, they had difficulty finding work and had returned to school to pursue new careers. Without more, Hige has not established that the trial court abused its discretion in equally dividing the marital assets.

## Conclusion

Hige has not established that the trial court abused its discretion in denying her motions to continue, denying her request for rehabilitative maintenance, and nearly equally dividing the marital estate. We affirm.

Affirmed.

ROBB, J., and BROWN, J., concur.

14